TATE *v.* STATE

[No. 445, September Term, 1963.]

314

Decided October 16, 1964.

The cause was argued before HENDERSON, C. J., and HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Edward F. Borgerding* for the appellant.

*Richard M. Pollitt, Special Attorney,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell* and *Stanley S. Cohen, State's Attorney* and *Assistant State's Attorney,* respectively, *for Baltimore City,* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

The appellant, Henry C. Tate, was tried and convicted of assault with intent to murder, by Judge Harris, sitting without a jury. He was sentenced to imprisonment in the Maryland Penitentiary for a period of five years. From that judgment and sentence he appeals.

On the evening of October 20, 1961, approximately fourteen men were engaged in drinking and shooting "crap" in an alley in Baltimore City. After drinking whiskey and losing thirty-five dollars in the game, the appellant believed that the prosecuting witness, one Butler, was using "loaded" or "crooked" dice. When Tate reached for the dice, he says that Butler drew a knife and placed it at his throat ordering him out of the game and alley. The appellant left the game and the alley, walked down Laurens Street where he met his brother and asked to borrow the latter's 22 caliber rifle. His brother went home and got the rifle, which he delivered to Tate. Appellant then returned to the alley with the rifle loaded with seventeen shells, told Butler that he was going to shoot him, and fired one shot which struck Butler's arm and lodged in his

stomach. After firing this shot, defendant left the alley. The next day he surrendered to the police at about 3:45 p.m. He was lodged in a cell, went to sleep until he was awakened, was interrogated and gave the police a statement, beginning at 5:45 p.m.

On December 8, 1961, appellant was tried and convicted under an indictment on the charge of assault with intent to murder John Butler before Judge Carter, sitting without a jury. He was sentenced to imprisonment in the Maryland Penitentiary for a period of seven years. On July 15, 1963, Tate filed a petition under the Post Conviction Procedure Act. After hearing, Judge Oppenheimer ruled that the original presentment and indictment by the grand jury were invalid. He found the determining issue to be whether the petitioner was entitled to relief since he was not represented by counsel at a preliminary hearing before the committing magistrate where his plea of "guilty" was taken. In the lower left corner of the form of the commitment to jail was the handwritten word "Plea" and beneath that the typewritten letter "G", which clearly indicated that the plea had been "guilty". This commitment paper was before the grand jury when Tate was indicted. Thus, ruled Judge Oppenheimer, the defendant was deprived of his constitutional right to be represented by counsel at a critical stage of the proceedings against him because, if the grand jury had not had the petitioner's plea of guilty before it, he might not have been indicted. Judge Oppenheimer found the original presentment and indictment to be invalid and granted the appellant his discharge and release from the Maryland Penitentiary. On the same day the appellant was reindicted by the grand jury and subsequently convicted on the charge of assault with intent to murder Butler by Judge Harris, sitting without a jury. He was sentenced to imprisonment for a period of five years in the Maryland Penitentiary. It is from this last judgment and sentence that the appellant brings this appeal.

He claims that he has been placed in double jeopardy since he was prosecuted a second time when he had already been subjected to the risk of life and limb in a prior trial on the same set of facts. This point of double jeopardy was not raised or passed upon below, and the State urges that the question is

not before us under Maryland Rule 885. The appellant counters by saying that the defense goes to the jurisdiction of the trial court. We see no need to decide the point, preferring to treat the question as properly before us on the assumption, for the purpose of decision only, that the matter is jurisdictional. Matters of jurisdiction are always before this Court, and are exceptions to the general rule that this Court only considers what has been first passed upon below. *Webb v. Oxley,* 226 Md. 339, 173 A. 2d 358; *Heath v. State,* 198 Md. 455, 85 A. 2d 43; *Berlinsky v. Eisenberg,* 190 Md. 636, 59 A. 2d 327. On this assumption, we find the appellant's contention of former jeopardy to be without merit. It has been held repeatedly in this State that when a traverser has been tried on an indictment or information that is invalid, he is not in jeopardy and he may be indicted and tried again. *State ex rel. Shatzer v. Warden,* 192 Md. 728, 64 A. 2d 711; *Kenny v. State,* 121 Md. 120, 87 Atl. 1109; *Stearns v. State,* 81 Md. 341, 32 Atl. 282. Judge Oppenheimer specifically ruled that the first indictment was invalid, thus bringing this case squarely within the rule set forth in the above cases.

The appellant next contends that he was so intoxicated and confused by lack of sleep that his statement to the police was not given freely and voluntarily. His testimony reveals that he was "drunk" when he surrendered himself to the police. Upon surrender he was placed in a cell and he went to sleep. Two hours later he was awakened by the police, and at that time he gave his statement. The testimony of Sergeant Burkard, who took the statement, was that as far as he could remember, appellant was perfectly sober and "if I saw a man wasn't in any condition to take a statement from him I would never take it." An examination of the statement itself shows that the appellant gave intelligent and coherent answers to questions asked of him by the police and was definite as to times and places.

This Court has repeatedly held that the determination of the admissibility of a confession is left largely to the trial court, and it will not be disturbed on appeal unless there is a manifest abuse of discretion. *Bryant v. State,* 229 Md. 531, 185 A. 2d 190; *Ralph v. State,* 226 Md. 480, 174 A. 2d 163; *Grammer v. State,* 203 Md. 200, 100 A. 2d 257. Here, the only evidence as

to appellant's intoxication was his own testimony which the trial judge was not bound to believe, since the credibility of the witness was primarily for his determination. The test is whether his disclosures to the police were freely and voluntarily made at a time when he knew and understood what he was saying. *Wiggins v. State,* 235 Md. 97, 200 A. 2d 683; *Bryant v. State, supra.*

Finally, the appellant contends that the verdict of the trial judge was against the "weight of the evidence" (Cf. Maryland Rule 886 a) in finding him guilty of assault with intent to murder. We find no merit in this. He argues that he had no intention of murdering Butler since he only shot him with one of seventeen bullets. This argument presumes that a specific intent to kill is necessary for his conviction. This Court has stated that the essence of the offense of assault with intent to murder is intent, so that if the intent is carried out, the resulting crime would have to be either first degree or second degree murder, had the victim died. *Marks v. State,* 230 Md. 108, 185 A. 2d 909. Specific intent to kill is not a necessary element for conviction of assault with intent to murder. The essential distinction between murder and manslaughter is the presence or absence of malice, which is the intentional doing of a wrongful act to another without legal excuse or justification. The inference of malice may be drawn from the fact of the use of a deadly weapon directed at a vital part of the body. *Chisley v. State,* 202 Md. 87, 95 A. 2d 577. The law presumes that in the absence of justification, excuse or some circumstances of mitigation, all homicides are committed with malice and constitute murder. This presumption also applies to cases of assault with intent to commit murder. *Davis v. State,* 204 Md. 44, 102 A. 2d 816. Here the defendant testified that he intended to shoot the victim in the side and did in fact shoot him in the stomach. He intended and did commit grievous bodily harm, with no attendant circumstances of justification, excuse or mitigation. If the intent was to commit grievous bodily harm and death had occurred in consequence of the attack, then the offense would have been at least murder in the second degree. It was not necessary that a specific intent to take life be shown. *Webb v. State,* 201 Md. 158, 93 A. 2d 80; and in

case of death not ensuing, it would be assault with intent to commit murder.

*Judgment affirmed.*