MAURICE CLAYVONE STEVENSON AND ERN-
EST SPENCER BORUM *v.* STATE OF
MARYLAND

[No. 242, September Term, 1967.]

2

*Decided April 22, 1968.*

The cause was argued before MURPHY, C. J., and ANDER-SON, MORTON, ORTH, and THOMPSON, JJ.

*James R. Miller* for appellants.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Linthicum, Jr., State's Attorney for Montgomery County,* and *Barry H. Helfand, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The appellants were arrested in the District of Columbia in 1965, Stevenson on 3 July and Borum on 6 or 7 July. They were

4

incarcerated in the District of Columbia jail, tried and convicted of the offenses with which they were charged and sentenced to imprisonment. Both were transferred to the District of Columbia Reformatory at Lorton, Virginia in 1966, Stevenson on 3 March and Borum on 14 October and both are incarcerated there at this time.[1]

On 14 September 1965 the appellants were jointly charged under four indictments returned by the grand jury of Montgomery County. Indictment No. 7172 charged rape, assault with intent to rape and assault and battery. Indictment No. 7173 charged robbery with a deadly weapon, attempted robbery with a deadly weapon, robbery and assault with intent to rob. Indictment No. 7174 charged the breaking of a dwelling in the daytime with intent to steal, larceny and receiving stolen goods. Indictment No. 7175 charged another offense of breaking a dwelling house with intent to steal. The only other entry on the dockets states, in each case: that a motion to stet the indictment was granted on 28 October 1965, and although the docket entries do not show the reason therefor, it apparently was because of the ruling in *Schowgurow v. State,* 240 Md. 121. Indictments Nos. 7367, 7366, 7368, and 7365 charging the same offenses respectively as the prior indictments were thereafter returned on 15 November 1965 and are now pending. The docket entries as to each of the indictments returned on 15 November show under date of 19 September 1966: "Copy of Ind. mailed to deft. E. S. B." As subsequent docket entries refer to the appellants by their initials, we take this to mean the appellant Borum. The entries on the docket for each pending indictment further show in relevant part:

"March 14, 1967 — Deft. M.C.S. motion for withdrawal of detainers fd. in No. 7365 Crim.

May 17, 1967—Order of Court appointing attorney for Deft. M.C.S. & E.S.B., fd.

June 14, 1967—Deft.'s motion to dismiss, fd.

1. Borum testified that his sentence will expire in 1979 and that he will be eligible for parole in 1972. The record does not disclose the length of Stevenson's sentence.

> August 14, 1967—Petitions and order of Court grant-
> ing writ of Habeas Corpus Prosequendum and writ,
> fd. in No. 7365 Crim.
>
> August 28, 1967—Hearing on Deft's. M.S.C. and
> E.S.B.'s motion to dismiss before Judge Pugh, Miss
> Wissenbach rept. and motion continued."

The dockets indicate that the hearing was resumed on 30 August and the motion was granted as to the second count of indictment No. 7366 and denied as to all other counts in all the indictments. The docket with respect to indictment No. 7365 contains one additional entry: "August 15, 1967—Writ issued ret: Aug. 25, 1967, 10:00 A. M." [2]

Each appellant testified in support of his motion to dismiss the indictments. Borum said that he "surrendered to the District of Columbia police July the 7th—July the 6th—'65." He was in the city jail in Washington until 14 October 1965 when he was transferred to Lorton and at the time of the hearing was incarcerated there under sentence. He never received notification of the charges lodged in Montgomery County but about a month after he was placed in the District of Columbia jail he "received a small piece of paper by a tier runner * * * That's a guy that runs up and down and brings you soap and stuff." The paper contained information that a "detainer had been placed against my record for the charge of rape. And that was all." He denied receiving copies of the indictments pending against him or of the indictments which were stetted. The first time he saw any indictments was on 16 May 1967 when his

---

2. Stevenson filed a petition for a writ of habeas corpus on 24 January 1967 and apparently Borum had filed such a petition about 3 months before. Counsel was appointed to represent the appellants with respect to the petitions on 8 February and a writ was issued out of the Circuit Court for Montgomery County on 17 April. A hearing on the writ was held 16 May and on 7 June the writ was dismissed. The court held that "the real relief sought by the petitioners is dismissal of the indictments pending against them in Montgomery County, on which detainers have been issued. The Court cannot grant such relief in a habeas corpus proceeding." It granted opportunity to file motions to dismiss the indictments. Such motions were filed on 14 June as noted above.

counsel showed him the pending indictments. He had never seen any bench warrants that were issued for his arrest. He knew what a bench warrant looked like and the small piece of paper delivered by the tier runner was not a bench warrant. It was a "standard form" with the word "rape" typed in and a "Mr. Thrailkill's name typed into it." About September (the year is not specified but apparently it was 1965) a friend brought a newspaper article to him in his cell in which his name and that of Stevenson appeared as having been indicted for rape in Montgomery County. It gave "no specific dates or circumstances nor anything." He knew nothing about being re-indicted. He never had an attorney to represent him in the Maryland proceedings until 8 February 1967 in the habeas corpus matter (the same attorney was appointed for him in the pending cases on 17 May 1967) and was not financially able to employ one. He had mailed a petition for a writ of habeas corpus in proper person in October 1966 and Stevenson mailed one in January 1967. With regard to the charges in Maryland he had never been arraigned, never had a preliminary hearing or any hearing other than on the petition for a writ of habeas corpus. He alleged that he was prejudiced by the fact of the detainers being lodged against him at Lorton as they resulted in his being placed in "maximum security. This stops any parole proceeding and work release proceeding or any outside activity that Lorton sponsors in the jurisdiction there * * * It also hindered me from going on bond, making bond in that jurisdiction, because if you've got a detainer against you you can't make a bond there because the detainer is outstanding against you." On cross-examination he stated that when he had received the paper from the tier runner he wrote three or four letters. Two of them came back. "The first time I mailed it to the wrong person; somebody said I didn't, they couldn't have dealings with this and I would have to write the Sheriff's department. I mailed it to the Sheriff's department and then that letter came back stating, referring me to the Detective Thrailkill department. And I just, you know, stopped right there." He did not file a paper in a court in Maryland until the petition for writ of habeas corpus. He was represented by an attorney regarding the charges in the District of Columbia and he told her about the detainer

and asked her "what possibly could I do about it." She replied that she could not have anything to do with that case as "she was confined to the case in the District of Columbia." When he received the paper from the tier runner, he was faced with three trials in the District of Columbia. He did not consider the petition for a writ of habeas corpus to be a request for a speedy trial; he was seeking information about the charges against him in Montgomery County. "This is the first time that I had any opportunity to pursue anything in this jurisdiction * * * I had no time at that time (when he received the paper), at that particular time or way in '66." He urged that Maryland should have let him "at least know a date so I could inform my witnesses or try to get a witness or try to recollect in my own mind what happened on that date, try to reconstruct something for it * * * If you could serve a bench warrant against me stating rape you could have put the date, rape against whom, whom I am supposed to have assaulted and whose house I broke into * * * What do I do? I write to any Judge and say, 'I'd like a speedy trial on rape?' "

Stevenson testified that he was arrested 3 July 1965 and had been incarcerated since that time—in the District of Columbia jail until 3 March 1966 and thereafter at Lorton. He claimed that he first learned of the charges pending in Montgomery County in "the middle part of September 1965" when he was given "a piece of paper stating there was a detainer lodged against my record for rape in favor of Detective Thrailkill." This was the only information he received until he was shown the indictments in May of 1967. Prior to 8 February 1967 he had no attorney to represent him or advise him regarding the charges in Maryland. The attorney representing him with regard to the charges in the District of Columbia told him he represented him only on those charges and suggested that he "hire a lawyer. At that time I didn't have no money to hire a lawyer." He was prejudiced by being denied parole "because of the detainers placed against my record, and work release was denied to me because of the detainer. I was told I could not receive work release to support my wife and children because I had detainers placed against my record." He found out that his brother-in-law (Borum) "had filed a habeas corpus" and

"took the same motion and had someone type it up for me and filed it in January of—January the 16th or 19th, 1966" (the correct date was January 24, 1967). On cross-examination he stated that he had talked to Borum about the detainer when they "went to the District court to answer the indictment" charging them with offenses in the District of Columbia. He did not write to anyone about the rape charge and particularly not "Inspector Thrailkill" because that officer had threatened him the night he was arrested, telling him that unless he made certain statements against Borum he would be charged "with a rape and seven or eight unsolved housebreaking charges in Maryland."

Copies of the docket entries pertaining to indictments Nos. 7172, 7173, 7174 and 7175 were admitted in evidence as the appellants' exhibits. A deputy United States Marshal testified that he had transported federal prisoners into Maryland on a writ of habeas corpus prosequendum but on cross-examination stated that he did so on order of "a district court judge for the District of Maryland" and had no authority to do so on an order of a state judge.

Inspector Fred P. Thrailkill of the Montgomery County Police testified for the State. He identified a copy of a letter of transmittal dated 19 November 1965 sent to Deputy Chief Hartnett of the Metropolitan Police Department as a detainer to be placed on Ernest Spencer Borum. He also identified a copy of a letter of transmittal dated 6 July 1965 to the same person. He said that the original was attached to a state warrant and an affidavit charging Stevenson with rape. Its purpose was to have the warrant filed as a detainer. He identified a third document as a similar copy of a letter regarding Borum and said that the original contained a warrant and an affidavit. The documents were admitted in evidence. On cross-examination he stated that indictments are not sent "unless they are requested" and that there was "nothing in the file to indicate there was a request." When the appellants were re-indicted, new bench warrants on each indictment were sent to the Metropolitan Police Department on 19 November 1965 with a request to file them as detainers and to return the previous rape warrants and officer's affidavits. His files contained nothing to show that anything else

had been sent in connection with the charges. The warrants did not contain the alleged date of the commission of the crime. He was unable to say what disposition was made of the warrants upon their receipt by the Metropolitan Police Department. He was permitted, however, to testify as to the procedure followed. The letters of transmittal with the attached warrants and affidavits go to the Fugitive Squad. "From the Fugitive Squad if the subject is later transferred to another institution then a letter goes to—a letter of transmittal—goes to that institution with a copy of the warrant as filed by Maryland; would accompany the subject to that institution and remain there until he is released. And he has to go back to the Fugitive Squad before being turned over to Maryland." He did not know why the appellants were not brought to trial. The State's Attorney is informed as to the action taken by the Maryland police authorities; "we leave it up to the State's Attorney to get the case before the court or any further action at that time to be taken by the State's Attorney's office."

The Record Clerk at the Lorton Reformatory was produced by the State. He testified that Lorton is a federal penitentiary "under the District of Columbia government." He had in his possession the records of the Reformatory with respect to each of the appellants. He identified as part of the records: (1) a memorandum dated 8 July 1965 to Borum "from the District of Columbia Jail Record Office." It answered the description of the paper Borum said was delivered to him by a tier runner in that it was addressed to Borum and advised him that the District of Columbia Jail was in receipt of a detainer from the Metropolitan Police Department in favor of F. P. Thrailkill, Chief of Detectives, Rockville, Md., charging him with rape and that "this detainer will be placed against your record as of this date." (2) a letter from the Acting Superintendent of the District of Columbia Jail dated 8 July 1965 acknowledging receipt of the detainer. (3) a letter from the Metropolitan Police Department dated 8 July 1965 to the Superintendent of the District of Columbia Jail requesting that a detainer be filed against Borum on a local charge of rape. It stated that Borum was wanted by F. P. Thrailkill, Chief of Detectives, Rockville, Md., that the Metropolitan Police Department held a warrant and

further requested that the Department be notified prior to Borum's release "in order that we may re-arrest him on a fugitive complaint." Although the Record Clerk was not "quite familiar" with the procedures in the District of Columbia Jail, he testified that "I would say" that document (1) was "the type of memorandum that is given to someone who might be called a tier runner, and delivered to the inmate." The three documents were admitted in evidence. The Record Clerk also had the file with respect to Stevenson and it was stipulated that as to three documents therein "the exhibits that are now in evidence, as directed to Mr. Borum, are identical and can be considered as additional exhibits for Mr. Stevenson." On cross-examination he said that document (1) was "the only notification of any type of detainer that would have been delivered to the appellants. The files regarding the appellants did not contain copies of indictments or anything to show that they "were ever sent or furnished copies of any indictments or information" or that they "were ever notified of the existence of any detainer such as robbery, housebreaking, receiving stolen goods, or anything of that nature." But the files would not contain a record of mail directed to the appellants personally.

The hearing court granted the motion to dismiss the second count of indictment No. 7366 (attempted robbery with a deadly weapon) and denied the motions as to all other counts in each indictment.

The appellants contend that they were denied both a speedy trial and due process of law on this appeal from the denial of the motion.

### SPEEDY TRIAL

It is clear that an appeal will lie, prior to a trial on the merits, from a denial of a motion alleging a violation of the constitutional right to a speedy trial. *Brown v. State,* 2 Md. App. 388, 393; *Allen v. State,* 1 Md. App. 249, 252.

The right to a speedy trial is guaranteed by Article 21 of the Maryland Declaration of Rights and Amendment VI to the Constitution of the United States. *Klopfer v. North Carolina,* 386 U. S. 213; *State v. Long and Nelson,* 1 Md. App. 326. But the right is a relative one and the time within which trial must be had to satisfy the guaranty depends on the facts

and circumstances of the particular case. *Jones v. State,* 241 Md. 599; *Kelly v. State,* 2 Md. App. 730. Four factors are relevant to a consideration of these facts and circumstances in determining whether a delay in trial assumes constitutional proportions: (1) the length of the delay; (2) the reason for the delay; (3) prejudice to the accused; and, (4) waiver by the accused.

### (1)

As a general rule it is only after a prosecution has been initiated that the issue of a speedy trial can be raised by an accused; until the grand jury acts there is no case to be tried. *Price v. State,* 235 Md. 295, 299; *Reddick v. State,* 219 Md. 95, 100, quoted in *Keyes v. State,* 236 Md. 74, 81. Cf. *Petition of Provoo,* 17 F.R.D. 183, aff'd, 350 U. S. 857. With respect to delay between arrest and indictment, there is no time limit, other than that fixed by the statute of limitations, upon action by the grand jury. *O'Connor v. State,* 234 Md. 459, 462, cited in *Price v. State, supra,* at 300.

In the instant case about 9 weeks elapsed between the appellants' arrest in the District of Columbia and their initial indictments in Maryland. However, those indictments were not valid under the *Schowgurow* decision and they were re-indicted 2 months later, about one month after the date of that decision. We think it obvious that the State acted with diligence in obtaining valid indictments. In any event, the maximum time to be considered is that between the valid indictments and the hearing on the motions to dismiss—about 21 months and 13 days, noting that the appellants chose not to proceed to trial upon the denial of their motions pending a determination of the matter on appeal. We do not think that this passage of 21 months and 13 days itself demonstrates a violation of the right to a speedy trial. See *United States v. Ewell,* 383 U. S. 116.

### (2)

Generally, delay caused by the accused is not to be computed in determining whether a defendant has been denied a speedy trial but only that delay which can be reasonably charged to the State. *King v. United States,* 105 U. S. App. D. C. 193, 265 F. 2d 567 (*en banc*), cert. denied, 359 U. S. 998, 79 S. Ct.

1124. The appellants urge that the State had a duty to seek their return from the penal institution in which they were incarcerated so as to enable them to have a prompt trial. If the State had such duty and failed to perform it, the delay in the trial of the appellants would be chargeable to it.

In *Kirby v. State,* 222 Md. 421, cert. denied, 364 U. S. 850, the Court of Appeals said at page 424 :

> "It has been held many times that no constitutional right to a speedy trial is denied, when the delay in trial is because the accused is in a federal prison." (citing authorities in other jurisdictions)

The Court assumed, without deciding, as it did in *Kirby v. Warden,* 214 Md. 600, 602, that there is an obligation upon the State prosecuting authorities to make application to the Federal Government for the return of a Federal prisoner to the State for trial under a state indictment and disposed of the case for other reasons. It found that there was no denial of a speedy trial because of waiver and because the question had not been raised below.[3] The question was clearly left open in *McCloskey v. Director,* 230 Md. 635. The Court said, at page 637 :

> "Where the accused is serving a sentence in a Federal Prison in another State, the authorities are divided. Some courts hold that even where the Federal authorities agree, as a matter of comity but not as a matter of right, to release or procure a prisoner for trial in a State Court, the State authorities are not required to seek such release or production." (cases cited)

However, the Court found it unnecessary to pass on the point as the constitutional rights to a speedy trial are limited to criminal prosecutions, and the case before it was not a "criminal prosecution" but a proceeding under Md. Code, Art. 31 B. The United States District Court for the District of Maryland also noted the division of authorities on the question in *Maryland v.*

---

**3.** In *Harris v. State,* 194 Md. 288, it was assumed that there was the right to a speedy trial where the accused was incarcerated in Maryland upon a prior conviction, although in that case the right was held to have been waived as not reasonably demanded.

*Kurek,* 233 F. Supp. 431 (1964). In *United States v. Banks,* 370 F. 2d 141 (4th Cir. 1966) it was stated: "Imprisonment in a state institution has been held an acceptable reason for delay in bringing a defendant to trial on Federal charges." [4] But it found the rule subject to "very substantial qualifications," distinguishing between a short period of confinement, which may justify delay in bringing a defendant to trial on other charges, and a long period of confinement, in which case no "substantial" delay in the initiation of efforts to obtain custody of him would be warranted. It said, "The dividing line is a variable, depending, in each case upon a number of factors," at page 144. It felt that the prosecuting authorities were entitled to give consideration to the probable difficulty and the cost of obtaining custody of the defendant and of his return to his original place of detention. If the State makes a request that an accused incarcerated in a federal institution be returned for trial and punishment and it is rejected, we think that the ensuing delay in bringing him to trial would not be unreasonable. See *People v. Winfrey,* 281 N. Y. S. 2d 823.[5]

In any event, in the instant case, we assume, without deciding, that the State of Maryland failed in a duty owed to the appellants to attempt to obtain their release for trial in Montgomery County and with this assumption proceed to a consideration of prejudice to the appellants.

### (3)

In *Fabian v. State,* 3 Md. App. 270, we held that when an

---

4. The Court cited *United States v. Simmons,* 338 F. 2d 804 (2d Cir. 1964); *Stevenson v. United States,* 107 U. S. App. D. C., 398, and referred to *Bistram v. People of the State of Minnesota,* 330 F. 2d 450 (8th Cir. 1964).

5. Title 18, § 4085 (a) U.S.C.A. provides that the executive authority of a state may request transfer of a federal prisoner for prosecution or punishment and that the Attorney General of the United States shall transfer the prisoner if he finds it in the public interest to do so. In the instant case no such request was made. The appearance of the appellants was obtained, however, for the hearing on the writ of habeas corpus and for the hearing on the motions to dismiss. We note that the District of Columbia is not a party to the Interstate Agreement on Detainers. Maryland is a party to the Agreement. Md. Code, (1967 Repl. Vol.), Art. 27, sections 616A-616R.

accused does not make a demand for a speedy trial, he must show that he has suffered actual prejudice caused by the undue delaying tactics of the State, stating that absent such a showing the right to a speedy trial had not been denied. We did not reach the question of prejudice to the defendant when demand for trial has been made. *Fabian v. State, supra,* note 7.

Where the delay is substantial, there may be a *prima facie* showing of prejudice and the State in such case has the burden of proving that there was no more delay than is reasonably attributable to the ordinary processes of justice and that the accused suffered no serious prejudice thereby. *Williams v. United States,* 102 U. S. App. D. C. 51, 53, 250 F. 2d 19, 21 (1957) [7 years delay]. There is no precise rule as to when a delay is "substantial". See *Petition of Provoo,* 17 F. R. D. 183 (D.C. Md.), affirmed per curiam, 350 U. S. 847 [10 years]; *United States v. McWilliams,* 82 U. S. App. D. C. 259, 163 F. 2d 695 (1947) [4½ years]. But when the delay is less than "substantial," even if it is purposeful, oppressive or negligent, at least some showing by the defendant of "a strong possibility of prejudice is required," although the right to a speedy trial has not been waived. *Bond v. United States,* 233 A. 2d 506 (D. C. App. 1967); *United States v. Banks, supra.* In *Banks,* there was no basis for a claim of waiver (note 4). Although the Court thought that the District Attorney should have taken steps to bring the defendant to trial during the ten-month interval after the indictment during which he was in the custody of the State [6] and could not justify the prosecutor's inactivity during that period, it found, "considering all of the circumstances, including the length of the delay and the possible prejudice to the defendant, that there had been no deprivation of his constitutional right to a speedy trial." The Court said, pages 144-145:

"* * * [I]n appraising the right to a speedy trial we are required to look at the possible prejudice the defendant has suffered as well as to the length of the delay and the reason for it. The delay was not so long as to make a prima facie showing of prejudice. During

---

6. This was the only period found by the Court to be attributable to the Government.

that interval Banks was not confined on the federal charge. There was no loss of witnesses. He suffered no detriment from it."

In the instant case we do not think that, under the circumstances existent, the delay was "substantial" so as to make a *prima facie* showing of prejudice. Therefore there must be a showing by the appellants of "a strong possibility of prejudice."

As heretofore set forth, each of the appellants testified that he was prejudiced by the fact of the detainer lodged against him with respect to parole, "work release" procedures and "making bond." These allegations go to prejudice to the person of each appellant as distinguished from prejudice to his defense. We do not deem the allegations to be material to the consideration of a denial of a speedy trial in the instant case, although prejudice to the person may be, in particular cases, relevant to such consideration. Assuming that the appellants were denied "work release" because of the detainers, this is in no wise comparable to the deprivation of employment alleged by the accused in *Klopfer v. North Carolina, supra,* who was a professor of zoology at Duke University. Nor did the pendency of the indictments here wrongfully interfere with the appellants' professional activities and with their travel "here and abroad" as was alleged in *Klopfer*. Nor did the appellants contend and, we see no reasonable possibility, that the pendency of the indictments against them forced "curtailment of their speech, associations and participation in unpopular causes" as was found in *Klopfer*. Of real significance is that each appellant was confined in prison, not because of the detainers or the indictments pending in Maryland, but because of charges against him in another jurisdiction and his subsequent convictions. As to the matter of parole, Borum testified that he would not be eligible for parole until 1972. The record is clear that the State offered to place him on trial promptly upon the denial of the motion to dismiss the indictments on 30 August 1967. Stevenson did not show that he was eligible for parole at the time of his testimony. The contention of prejudice by being precluded from making bond is without merit. Both claimed to have no funds. Counsel was appointed to represent them on the charges in the District of Columbia and in Maryland. After their convictions in the Dis-

16

trict of Columbia they could not have been released on bond in any event while serving the sentences imposed.

Neither appellant directly contended that the delay in trial prejudiced his defense. Borum urged that the State should have let him "at least know a date so I could inform my witnesses or try to get a witness or try to recollect in my own mind what happened on that date, to try to reconstruct something for it." But neither contended that witnesses who could substantiate a valid defense of alibi or otherwise and who would have been available but for the delay, became unavailable as a result of the delay. Such unavailability of witnesses would be a most compelling showing of prejudice. *Bond v. United States, supra,* at 512. Nor did either show a plausible inability to recall or reconstruct the events of the days of the offenses when the alleged offenses and the dates of their commission became known to him. From the record before us we find no "strong possibility" that the defense was hampered by the delay in trial.

(4)

In view of our finding as to prejudice, we need not reach the question of waiver by the appellants of the right to a speedy trial, assuming, but not deciding, that there was no basis for waiver.

Considering all of the circumstances, including the length of the delay and the possible prejudice to the appellants, we think that the lower court properly concluded after the hearing on the motions to dismiss that there had been no deprivation of the appellants' constitutional rights to a speedy trial. In so holding, however, we do not condone the failure of the State to attempt to obtain the appellants for trial. It appears from the appellants' appearance in court in Maryland on two occasions that the federal authorities would have made the appellants available.

## DUE PROCESS

The appellants contend that the failure of the State promptly to notify them of their indictment and to serve copies of the indictments on them denied them due process of law. They allege that other than the information with regard to the detainers on the rape charge they had no knowledge of the charges against them until 16 May 1967 when the indictments were shown to

them. There were entries in the dockets that copies of the indictments were mailed to Borum on 19 September 1966 but to what address is not indicated. Borum denied receiving them and the records of Lorton do not reflect that they were received, although there was evidence that if they were mailed directly to Borum he could have received them without the records so showing. The dockets are silent as to mailing of the indictments to Stevenson. The appellants urge in support of their contention that the provisions of Article 21 of the Maryland Declaration of Rights and Maryland Rule 719 preclude their prosecution. Article 21 of the Maryland Declaration of Rights provides, in pertinent part:

> "That in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment or charge, in due time (if required) to prepare for his defense; * * *."

Maryland Rule 719 a provides, in pertinent part, regarding the indictment:

> "The accused shall be furnished a copy thereof as soon as practicable after it shall have been prepared and in any event within a reasonable time before he is called upon to plead * * *."

Information as to the accusation need not be conveyed by any other means than a copy of the indictment or charge, *Goeller v. State,* 119 Md. 61, for the purpose of an indictment is to apprise the accused of the crime charged, *Dortch v. State,* 1 Md. App. 173. The appellants were apprised of the crimes charged by the indictments ultimately delivered to them and, in view of our holding that their defense was not prejudiced by the delay in trial and as they have not yet been tried (since 30 August 1967 by their specific request), they have received the indictments in due time to plead and to prepare for their defense. Although it may be that the appellants were not furnished copies of the indictments "as soon as practicable" after they were prepared, Rule 719 a provides no sanction for violation of this requirement and prosecution is not precluded thereby in the absence of a constitutional violation. See *Schuette v. State,* 228

Md. 340; *Ballam v. Warden,* 196 Md. 644. We cannot justify the failure of the State to furnish the appellants copies of the indictments promptly, but, under the circumstances of this case, we find no denial of their constitutional rights.

> *Order denying the motion to dismiss the indictments affirmed.*