JOHN MARSHALL HARTLEY *v.* STATE
OF MARYLAND

[No. 27, September Term, 1967.]

*Decided July 1, 1968.*

The cause was submitted to MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*G. Denmead LeViness* for appellant.

*Dickee M. Howard, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *I. Elliott Goldberg, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

In March of 1961, appellant, John Marshall Hartley, was jointly indicted with his wife under five indictments charging them with armed robbery and allied counts. On April 28, 1961, appellant pleaded guilty before Judge Joseph L. Carter in the Criminal Court of Baltimore under each of the first counts of Indictments Nos. 991 through 995, charging armed robbery of several loan offices. He was sentenced to a term of twenty years imprisonment in the penitentiary for each conviction, the first two terms to run consecutively and the other three to run concurrently with the second one. The cases against his wife were stetted.

On January 31, 1964, Hartley filed a petition under the Uniform Post Conviction Procedure Act. He contended, among other things, that he had been denied the right to appeal his 1961 convictions and his pleas of guilty to the charges in the several indictments had been involuntarily made. A hearing was held before Judge Edwin Harlan on May 5, 1964. Judge Harlan granted Hartley a delayed appeal after finding that his attempt to appeal was delayed by circumstances beyond his control, but made no factual findings or conclusions of law as to his other contentions. The Court of Appeals therefore remanded the case back to the Criminal Court of Baltimore, without affirmance or

reversal, for an evidentiary hearing and a factual finding as to whether the pleas of guilty made by Hartley on April 28, 1961 were voluntarily made. *Hartley v. State,* 238 Md. 165, 208 A. 2d 72.

On remand Judge Carter heard the case and on October 19, 1965, filed an opinion granting the appellant Hartley a new trial. However, before the appellant could be retried, the Court of Appeals handed down its decision in *Schowgurow v. State,* 240 Md. 121, 213 A. 2d 475. As a result of the *Schowgurow* decision, new indictments were returned against appellant, same being indictments Nos. 6398 through 6402, each charging him with robbery with a dangerous and deadly weapon and allied counts. He entered pleas of not guilty by reason of insanity at the time of the commission of the crime, and not guilty, to each indictment.

On November 14, 1966, appellant was tried in the Criminal Court of Baltimore by Judge James A. Perrott, sitting without a jury, and was convicted under the first count (robbery with a dangerous and deadly weapon) of indictments Nos. 6398, 6400, 6401 and 6402, and a Motion for Judgment of Acquittal was granted in indictment No. 6399 when the State was unable to produce its chief witness. He was sentenced to a term of twenty years in indictment No. 6398 and to a term of ten years in each of the other three indictments (Nos. 6400, 6401 and 6402), to run consecutively with the sentence imposed in indictment No. 6398 and with each preceding indictment, for a total of fifty years, to be served in the Maryland Penitentiary, sentence in indictment No. 6398 to begin as of March 13, 1961.

From his convictions, he now appeals to this Court.

The State's first witness was Lewis H. McKnight, Jr., who testified that on November 28, 1960 he was employed by the State Finance Company on Harford Road in Baltimore. On that date, at approximately 5:30 o'clock p.m., as he was preparing to close the office, he was called to the counter by the cashier. There he was faced by the appellant, who produced an automatic revolver, pointed it in his face, and demanded the money. McKnight gave him all the money in the cash drawer amounting to approximately $260.00. Whereupon appellant, after warning McKnight and the cashier not to do anything, left. He posi-

tively identified appellant in the courtroom as the robber, and had previously identified appellant in a police line-up. This was the substance of the testimony in indictment No. 6400.

The second witness, Mrs. Carole N. Ferrara (formerly Carole N. Lugenbeel), testified that on November 11, 1960, she was employed at the Circle Credit Company in Baltimore as a "Girl Friday". The company's office was located on the second floor at 1059 Hillen Street. On that date, about 4:30 o'clock p.m., appellant entered the office, pulled a gun out of his pocket, told her this was a hold-up and to give him the money. She gave him all the money in the cash drawer amounting to $50.96. Whereupon, after cautioning her, he turned and left. She made a positive identification of appellant in the courtroom, and had previously identified him in a police line-up. This was the substance of the testimony in indictment No. 6938.

The same witness, Mrs. Ferrara, further testified that on November 23, 1960 she was working at the Circle Credit Company and that at approximately 11:30 o'clock a.m. appellant entered the office and came behind the counter where she was alone. The witness recognized appellant from the previous hold-up, and as he partially removed his gun from his pocket, she told him to put it back in his pocket. She then gave him the money amounting to approximately $100.00. He made her open the safe in which there was a small amount of cash. Before he left, he made her enter the bathroom, closed the door and left. She identified appellant in court as the robber, and had previously identified him in a police line-up. This was the substance of the testimony in indictment No. 6402.

The State next produced Raymond F. Delahanty, who testified that he was the manager of the Aetna Finance Company and on December 5, 1960, he was at the Highlandtown office located at Eastern Avenue and Conkling Street in Baltimore. About 5:45 o'clock p.m., he received a buzz to come to the front office. There he found appellant behind the counter and the cashier, Jo Ann Fedi, braced against the wall. Appellant was armed with a pistol, which he pointed at him and told him to "stand right there." The cash drawer was open and appellant grabbed up all the money amounting to between $670 and $700. After he had cleaned out the drawer, he asked if there was any

more money. Delahanty told him, "that is it." Whereupon, he told everyone to stay inside and, as he passed Delahanty, he said, "Especially you." He then left by the only entrance leading to the stairs on Conkling Street. Appellant was positively identified by the witness in the courtroom. He had previously identified appellant at the preliminary hearing. He did not attend the line-up. The State's last witness was Bryan Bruck who, on December 5, 1960, was working in the collection office of the Aetna Finance Company at the time of the hold-up making phone calls. At that time he was struck on the head by a gun and as he stood up, there was a man facing him with a gun. He testified as to the details of the robbery, but was unable to make a positive courtroom identification. This was the substance of the testimony in indictment No. 6401.

Appellant raises eight contentions on his appeal.

1. That the State of Maryland subjected appellant to double jeopardy and thus violated his constitutional rights.
2. That the court should have suppressed all evidence (witness identification) because it was illegally obtained by an illegal arrest; and should have granted his pretrial motion for declaration of an illegal arrest.
3. The court should have excluded all evidence because it was obtained during an unreasonable delay between the arrest and preliminary hearing in violation of the Mallory Rule and his federal constitutional rights.
4. That the court should have dismissed the cases because the appellant could not be given a fair trial because of Rights violations of the federal constitution.
5. That the court should have dismissed the indictments because the Criminal Court of Baltimore lacked jurisdiction, and the indictments were invalid because of Federal Constitutional Rights violations.
6. That the appellant failed to receive a fair and speedy trial as guaranteed by the Constitution.
7. That the court should have granted appellant's Motion for Judgment of Acquittal under Indictment No. 6401.
8. That the court erred by imposing a fifty year sentence on four indictments convictions, when at his original trial in 1961 the sentence was forty years for all five indict-

ments, and that this was a violation of the 14th Amendment of the United States Constitution.

I

Appellant's first contention is that he was placed in double jeopardy as a result of his retrial and this was a violation of his constitutional rights.

We find no merit to this contention. It has been repeatedly held in this State that the rule of double jeopardy is not a constitutional right but exists here as a matter of common law. *Robb v. State,* 190 Md. 641, 60 A. 2d 211 (1948); *Ruckle v. State,* 230 Md. 580, 187 A. 2d 836 (1963). The double jeopardy protection of the Fifth Amendment is not transmitted to the States through the Fourteenth Amendment. *Wampler v. Warden,* 231 Md. 639, 191 A. 2d 594 (1963); *Nixon v. Director,* 1 Md. App. 14, 226 A. 2d 352 (1967). In the event of a finding that the trial court had committed error, a new trial may be granted without infringing upon the common law rule against double jeopardy. *Ruckle v. State, supra; Gray v. Director,* 2 Md. App. 412, 234 A. 2d 783 (1967).

Here appellant's retrial was brought about at his own instance as a result of his petition filed under the Uniform Post Conviction Procedure Act some three years after his original conviction which resulted in the granting of a new trial for the identical same offenses to which he had previously plead guilty. In *United States v. Tateo,* 377 U. S. 463, 84 S. Ct. 1587, 12 L. Ed. 2d 448 (1964), the Supreme Court said that a defendant whose conviction had been set aside because of a collateral attack was not placed in double jeopardy. The *Tateo* case relied upon *United States v. Ball,* 163 U. S. 662, 16 S. Ct. 1192, 41 L. Ed. 300 (1896).

Moreover, in *Tate v. State,* 236 Md. 312, 203 A. 2d 882 (1964), the Court of Appeals held that when a defendant had been tried on an indictment or information that is invalid he is not in jeopardy, and may be indicted and tried again. This Court adopted the rule laid down in *Tate v. State, supra,* in *Sadler v. State,* 1 Md. App. 383, 230 A. 2d 372 (1967); *Benton v. State,* 1 Md. App. 647, 232 A. 2d 541 (1967); *Boone v. State,* 2 Md. App. 80, 233 A. 2d 476 (1967); *Blake v. State,* 2 Md. App. 492, 235 A. 2d 569 (1967).

Here the appellant, after being awarded a new trial, but before his cases were tried, elected to have the indictments involved in his first trial declared invalid under *Schowgurow v. State,* 240 Md. 121, 213 A. 2d 475 (1965) and companion cases. He cannot now claim double jeopardy as a result of his trial upon the new indictments for the same offenses of which he was previously convicted. See also *Gee v. State,* 2 Md. App. 61, 233 A. 2d 336 (1967) where the facts were similar to the facts in the instant case.

## II

Appellant's second and third contentions relate to the suppression of all the evidence because he alleges that it was illegally obtained as a result of an illegal arrest and also should be excluded because of an unreasonable delay between his arrest and the preliminary hearing in violation of the *Mallory* rule and his constitutional rights. Both are equally without merit.

The trial court deferred ruling on the motion to suppress pending a hearing on the evidence. Appellant contends that the in-court identifications of the appellant and testimony as to the identification of him at the lineup and preliminary hearing were improperly admitted in evidence because appellant was illegally arrested and because he was not represented by counsel at the lineup immediately following his arrest. This Court has held that *Mapp v. Ohio,* 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961) did not compel the exclusion of testimony as to the identification of an accused in a lineup as such testimony was not "tangible" evidence which was the fruit of an unlawful search. *Nadolski v. State,* 1 Md. App. 304, 308, 229 A. 2d 598 (1967). It is not here alleged that the lineup was either unfair or unreliable and there is nothing *per se* unconstitutional about a police lineup. Moreover, since the lineup was held in March of 1961, prior to the decisions of the United States Supreme Court in *United States v. Wade,* 388 U. S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149, and *Gilbert v. California,* 388 U. S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178, decided June 12, 1967, the legal principles enunciated in those cases do not apply and the presence of counsel was not required. *Stovall v. Denno,* 388 U. S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (de-

cided the same day). We find, therefore, that the in-court identification and the testimony as to the identification of the appellant at the lineup and preliminary hearing were properly admissible under the rules of law then applicable even assuming the arrest was illegal. *Tender v. State,* 2 Md. App. 692, 696, 697, 237 A. 2d 65 (1968).

Appellant's argument that the court should have excluded all the evidence, including identification evidence, because of an unreasonable delay between the arrest and the preliminary hearing in violation of the *Mallory* rule and federal constitutional rights has no merit. The so-called *Mallory* rule as enunciated in *Mallory v. United States,* 354 U. S. 449, 77 S. Ct. 1356, 1 L. Ed. 2d 1479 (1957) is a federal rule which applies only to federal prosecutions and has no application to prosecutions in State courts as of this date. *Culombe v. Connecticut,* 367 U. S. 568, 601, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961) ; *Bean v. State,* 234 Md. 432, 444, 199 A. 2d 773 (1964). Moreover, the facts in *Mallory* were vastly different from the facts here, where the objection relates to identification evidence alleged to have been obtained between the date of the arrest and the preliminary hearing. While it appears that the appellant was given a preliminary hearing shortly after his arrest, under Maryland law, a preliminary hearing is not required. *McCoy v. Warden,* 1 Md. App. 108, 114, 227 A. 2d 375 (1967) ; *Fabian v. State,* 3 Md. App. 270, 281, 239 A. 2d 100 (1968). Also there is no constitutional right to counsel at the time of a person's arrest or at a preliminary hearing where no plea is taken. *Timbers v. State,* 2 Md. App. 672, 236 A. 2d 756 (1968) ; *State v. Hardy,* 2 Md. App. 150, 233 A. 2d 365 (1967).

Assuming that appellant's arrest was illegal, an illegal arrest does not affect the jurisdiction of the court, is not ground for dismissing an information or indictment, and does not preclude trial and conviction for the offenses. *Matthews v. State,* 237 Md. 384, 206 A. 2d 714 (1965) ; *Nadolski v. State, supra;* *Powell v. State,* 1 Md. App. 495, 498, 231 A. 2d 737 (1967). During the course of the trial no damaging statements made by appellant or physical evidence was introduced by the State. Therefore, the trial court properly overruled appellant's motion

to suppress. *Matthews v. State, supra; Nadolski v. State, supra; Britton v. State,* 2 Md. App. 285, 234 A. 2d 274 (1967).

## III

Appellant's fourth and sixth contentions relate to denial of due process and failure to receive a fair and speedy trial, and may be considered together.

Appellant's argument under his fourth contention relates to the lapse of time between his original conviction and his second trial. He was first tried on April 28, 1961 for offenses that occurred in November and December of 1960. His second trial took place on November 14, 1966. At his second trial he entered pleas of not guilty by reason of insanity at the time of the commission of the offenses, and not guilty.

As a result of his insanity pleas he was sent to The Clifton T. Perkins State Hospital for an evaluation of his sanity at the time of the commission of the offenses and his ability to assist in his own defense. The evaluation as set forth in the Staff report disclosed that appellant "is currently without mental disorder." However, the Staff was unable to reach an opinion as to his mental condition at the time of the commission of the crimes in November and December of 1960, since the time was so remote from the date of his initial examination on April 13, 1966.

Appellant contends that because of the inability of the Staff at the hospital to evaluate his mental condition at the time of the commission of the alleged offenses in November and December of 1960, he was denied due process of law, or, as he expresses it, "could not be given a fair trial because of rights violations." We find no merit to this contention.

Although he was originally indicted in March 1961, he failed to raise the issue of insanity until his arraignment on April 7, 1966, and then only as to the time of the commission of the offenses in the fall of 1960. He was well aware of his rights as was shown by the fact that when his counsel filed written pleas of not guilty by reason of insanity at the time of the commission of the offenses and not guilty by reason of insanity at the present time, appellant ordered that the latter plea be stricken.

Appellant offered no evidence at the trial on November 14, 1966 to support his plea of insanity at the time of the com-

mission of the crimes, and the lower court found him to be sane on the date alleged in each indictment. On this appeal he now seeks to place the blame on the lower court (Judge Carter) for failing to order a mental examination of appellant at the time of his first trial on April 28, 1961. Under Article 59, Section 9, Maryland Code, 1957 (which was then the law), the lower court could have ordered such an examination if it appeared to the court or if it had been alleged by appellant that he was insane, or if the court had any reason to suspect that appellant might be insane. There is nothing in the record before us to indicate that the lower court had any reason to suspect that appellant was insane or incompetent to stand trial, nor did either he or his counsel make any such allegation. It was some five years later, after new indictments were returned against him, that he first raised the issue of insanity.

While it is unfortunate that the Staff at The Clifton T. Perkins State Hospital was unable to make an evaluation of appellant's mental condition at the time of the commission of the offenses with which he was charged, because of the length of time that had intervened prior to his being sent to the hospital for an evaluation, appellant cannot now complain over his own failure to raise the issue. He was given the opportunity to plead insanity at his first trial but failed to do so, nor did he raise the issue in his petition under the Uniform Post Conviction Procedure Act filed January 31, 1964. *State v. Murdock,* 235 Md. 116, 200 A. 2d 666 (1964).

In this State, "a man is presumed sane until sufficient proof of his insanity is introduced to raise a question in the minds of reasonable men as to whether he is or is not sane." *Lipscomb v. State,* 223 Md. 599, 604, 165 A. 2d 918 (1960). Since this case was tried prior to June 1, 1967 the proof necessary to overcome the presumption of sanity must be evidence of insanity as defined under the *McNaughton-Spencer* rule, *Rowe v. State,* 234 Md. 295, 199 A. 2d 785 (1964), and when sufficient proof of insanity has been introduced to overcome the presumption of sanity, the State has the burden of proving sanity beyond a reasonable doubt. *Bradford v. State,* 234 Md. 505, 200 A. 2d 150 (1964). See *Bergin v. State,* 1 Md. App. 74, 227 A. 2d 357 (1967). Appellant offered no evidence at the trial to over-

come the presumption of sanity at the time of the commission of the offenses, and the lower court properly overruled appellant's motion and found him to be sane as of that date.

There is no merit to appellant's sixth contention that he was denied a fair and speedy trial. The facts themselves are the best answer to this contention. The original indictments were returned in March of 1961, and appellant was tried on April 28, 1961. He waited until January 31, 1964 to file a petition under the Uniform Post Conviction Procedure Act. The hearing was held on May 5, 1964 when he was granted a delayed appeal. His appeal was heard by the Court of Appeals and remanded back to the Criminal Court of Baltimore on March 16, 1965, and a hearing was held before Judge Carter, sitting in that court, and, on October 19, 1965, Judge Carter filed an opinion granting appellant a new trial. The Court of Appeals handed down its decision in *Schowgurow, supra,* on October 11, 1965, as a result of which new indictments were returned against appellant on December 21, 1965. Counsel was appointed for him and he was arraigned on January 11, 1966, at which time he pleaded not guilty. He was dissatisfied with his attorney and on March 22, 1966 his attorney's appearance was stricken and counsel of his choice was appointed for him. He was rearraigned on April 11, 1966, at which time he entered pleas of not guilty by reason of insanity at the time of the commission of the offenses and not guilty. This necessitated his being sent to The Clifton T. Perkins State Hospital for an evaluation as to his mental condition which resulted in further delay. He was returned from the hospital, and on September 14, 1966 filed a motion for discovery and inspection, and on September 20, 1966 filed motion to suppress evidence, motion to dismiss indictments and memorandum in support of motions. He was tried on November 14, 1966. It is, therefore, apparent that there was no delay on the part of the State in bringing appellant to trial. The delay, if any, resulted from appellant's own conduct. Since the appellant made no demand for a speedy trial nor did he suffer any actual prejudice by any undue delaying tactics of the State, he cannot now complain that he was denied a fair and speedy trial. See *Fabian v. State, supra; Lawless v. State,* 3 Md. App. 652, 241 A. 2d 155 (1968) ; *Stevenson v. State,* 4 Md. App. 1, 241 A. 2d 174 (1968).

His remaining allegations under his fourth contention, that his counsel was incompetent and that the State joined in a conspiracy with his trial counsel to induce him to plead guilty, relate to events occurring at his first trial in 1961, for which he was granted relief, and are not properly before this Court.

## IV

Appellant's fifth contention is that the lower court should have dismissed the indictments because the Criminal Court of Baltimore lacked jurisdiction and the indictments were invalid because of Federal Constitutional rights violations.

Appellant contends that the entire composition of the judicial system of this State is unconstitutionally constituted because all officeholders (including judges) were required to declare a belief in the existence of God under Article 37 of the Maryland Declaration of Rights.

The contention was answered in the recent federal decision, *Ralph v. Brough,* 248 F. Supp. 334 (D. Md. 1965) where Chief Judge Thomsen at p. 336 said:

> "The decision of the Supreme Court in *Torcaso v. Watkins,* 367 U. S. 488, 81 S. Ct. 1680, 6 L. Ed. 2d 982 (1961), indicates that if a person who had been appointed or elected judge did not believe in the existence of God, he could have refused to make the prescribed declaration, and could have obtained his commission by mandamus, as Torcaso did. It does not require a holding that the judges of the various courts of the State of Maryland are not legal and constitutional judges, because they made the declaration at the time they took office. This Court holds that the judges who heard Ralph's case in the Circuit Court for Montgomery County and the judges of the Court of Appeals of Maryland were de jure judges."

See also *Breeding v. Warden,* 244 Md. 716, 224 A. 2d 105 (1966) and *Wilmer v. Warden,* 244 Md. 718, 224 A. 2d 106 (1966).

Also in *White v. State,* 244 Md. 188, 223 A. 2d 259 (1966), the appellant contended that under *Schowgurow v. State, supra,*

the fact that the complaining witness, in order to procure the arrest warrant, and the committing magistrate and the State's attorney, in order to qualify for office, all had to declare a belief in God, invalidates his being brought before the Criminal Court and his subsequent conviction. In finding the appellant's contention without merit, the Court of Appeals, speaking through Judge Marbury, at page 190 said:

"Short answers are, first, that since the decision of the Supreme Court in *Torcaso v. Watkins*, 367 U. S. 488, 6 L. Ed. 2d 982, on June 19, 1961, the committing magistrate and the State's attorney (both of whom necessarily were elected or appointed after 1961) could not be required to profess a belief in God as a prerequisite to qualifying for an office of profit or trust, and similarly the complaining witness could cause a warrant to be issued without declaring that he believed in the existence of a Supreme Being; second, the record is silent as to whether the two officials on taking office or the witness in procuring the warrant in fact did or did not declare a belief in God; and, third, that if any or all of the three voluntarily did declare a belief in God obviously he exercised a constitutionally guaranteed right of religious freedom."

We find appellant's contention to be without merit.

Appellant's further argument that the indictments were invalid because of Federal Constitutional rights violations, in that it was a violation of due process and equal protection to indict fifty-eight months after arrest and to hold imprisonment for fifty-eight months (1961-1966) before a valid indictment was placed against him is only a bald statement of fact, unsupported by authority, is without merit and has been previously answered. Furthermore, the sentences imposed upon his second conviction began as of March 13, 1961.

V

Appellant's seventh contention is that the court erred in not granting his motion for judgment of acquittal under indictment No. 6401. This indictment relates to the robbery that occurred

in the Highlandtown office of the Aetna Finance Company on December 5, 1960. His argument here is that the State alleged in the indictment the robbery of Raymond F. Delahanty, when the evidence revealed that the robbery victim was not Delahanty but Jo Ann Fedi, the custodian of the cash drawer. We find no merit in this argument. The record discloses Raymond F. Delahanty was the manager and responsible for the office. When he came upon the scene, appellant, armed with a gun, was behind the counter. The cash drawer was open but no money had been removed. When asked what he was doing behind the counter, appellant pointed the gun at Delahanty and said, "This is what I'm doing here." Appellant then took all the money from the cash drawer and asked Delahanty if there was any more money in the office. When Delahanty replied, "No", appellant walked over to him and stated he wanted no one to follow him out of the office. Looking at Delahanty, he said, "Especially you." He then left after taking between $600 and $700 from the office.

Robbery is a crime against the person. *Clark and Marshall, Crimes* (6th Ed.), §12.09 defines robbery as the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence, or by putting him in fear. The property taken need not be owned by the person robbed. Actual possession or custody is sufficient against the wrongdoer. *Clark and Marshall,* §12.11; *Dyson v. Warden,* 1 Md. App. 469, 473, 231 A. 2d 78 (1967). A charge of robbery may be sustained by proof that the property was forcibly taken from the care, custody, control, management or possession of one having a right superior to that of the robber. Robbery, 77 C.J.S., §7. Here Raymond F. Delahanty was the office manager for the Aetna Finance Company, and as such was responsible for the money. He was present when the office was robbed at gunpoint. The lower court found that Delahanty was properly named as the victim in the indictment and we agree.

## VI

Appellant's eighth contention is that the lower court erred in sentencing by imposing a fifty years sentence on four indictments' convictions, when at the original trial in 1961 the sen-

tence was forty years for all five indictments, because it violated the Fourteenth Amendment of the United States Constitution.

In the instant case the appellant was found guilty on the first count of four armed robbery indictments and sentenced to serve twenty years on indictment No. 6398, ten years on indictment No. 6400, ten years on indictment No. 6401, and ten years on indictment No. 6402, all sentences to run consecutively. None of these sentences exceed the statutory maximum authorized by Section 488 of Article 27, Maryland Code (1957).

At his first trial appellant was convicted under the first count of five armed robbery indictments. He was sentenced to twenty-year terms under the first two indictments, to run consecutively, and twenty-year terms under the remaining three indictments, to run concurrently with two twenty-year sentences previously imposed, or a total of forty years to be served. He now contends that the harsher penalty imposed after his second trial constitutes cruel and unusual punishment.

Under Maryland law it has been held that on retrial under the same indictment, the trial judge could impose a greater sentence than had been previously imposed. *Hobbs v. State,* 231 Md. 533, 191 A. 2d 238, cert. den. 375 U. S. 914, 84 S. Ct. 212, 11 L. Ed. 2d 153. In *Hobbs v. State, supra,* the Court said:

> "It has been held by this Court in numerous cases, as here, that ordinarily any punishment authorized by statute and within statutory limits is not cruel and unusual under Article 16 or 25. * * * In asking for and receiving a new trial, appellant must accept the hazards as well as the benefits resulting therefrom."

Here the appellant was convicted in 1961 and in 1964 was granted a new trial. After the decision of the Court of Appeals in *Schowgurow v. State, supra,* the appellant chose to avail himself of the relief afforded him thereunder and was reindicted on December 21, 1965.

In *Moon v. State,* 1 Md. App. 569, 232 A. 2d 277 (1967), the question presented was: Does the due process clause of the

Fourteenth Amendment of the Constitution of the United States, or the common law as applied in Maryland preclude a greater sentence at the second trial than at the former? This Court held that: *"Tate v. State*, 236 Md. 312, 203 A. 2d 882, and *State v. Barger*, 242 Md. 616, 220 A. 2d 304, make clear that where an indictment is invalid, a defendant can be retried since he has not previously been put in jeopardy. It would seem obvious that in such event, his punishment could be greater than at the prior trial." Cf. *Reeves v. State*, 3 Md. App. 195.

We find appellant's final contention without merit.

*Judgments affirmed.*