## L & S CONSTRUCTION COMPANY, INC. *v.* BRADBURY HOMES, INC., ET AL.

[No. 55, October Term, 1955.]

*Decided December 6, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ

*Waldo Burnside,* for appellant.

*Patricia Warren,* for appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment for $6,630 entered upon a jury verdict in an action to recover damages for delay in the completion of a contract to install storm drains in a housing project. The declaration relied upon a written contract dated March 27, 1952, and signed by the parties, and upon two supplemental written con-

tracts dated September 10, 1952, and November 5, 1952, modifying in certain respects the original contract. The last contract provided for completion of the work on or before November 19, 1952, with a possible extension if delays were caused by bad weather. The appellant filed general issue pleas. At the trial, the contracts were offered in evidence, and it was shown that the work was not completed until July, 1953. It was shown that by reason of the delay the appellees were unable to complete the streets or to sell and obtain settlement upon certain houses they had constructed. They claimed damages in an amount measured by the interest they were required to pay on certain construction loans during the period of delay.

The appellant's first contention is that the court erred in sustaining an objection to a question put to Mr. Bantes, president of both the appellee companies, in cross-examination. The question was: "Now you [testified] * * * that you never owed any money and that you had paid in advance, which I believe is correct, but wasn't it agreed at the time this contract was made— before it was made, that work should be paid for in advance?" Passing the point that this seems an obvious effort to vary the contract by parol, we cannot find that the appellant was harmed by the ruling. The question conceded that payments had been made in advance, and it seems quite immaterial whether this was required by the terms of the contract or not. Counsel for the appellant also objected to the court's charge to the effect that the parties were bound by the terms of the written contracts, on the ground that this precluded the jury from considering whether the delays were "because of waiting for further payments on the contract", but he also admitted at that time that "actually, the payments do appear from the record to have been made in advance". While the witnesses for the appellant assigned various reasons for the delay, which were properly considered by the jury, delay in payment was not relied upon as an excuse. It was undisputed that $5,000 was

paid when the first contract was executed, other payments were made, as the work progressed, whenever requested, and that final payment in full was made on November 3, 1952, before the last supplemental contract was executed. Mr. Bantes testified: "* * * they always got paid in advance." Mr. Smith, treasurer of the appellant corporation, testified at one point, without objection, that the payments made were in strict accordance with a verbal understanding he had with Mr. Bantes at the time the original contract was signed.

The appellant further contends that the testimony as to the amount of interest due under the construction loans was not sufficiently definite for the jury to consider in awarding damages. Mr. Bantes testified, without objection, that the Veterans Administration "would not allow us to close the houses until such time as I had one continuous road from a hard-surfaced road continuous up to the development. * * * we couldn't get them to finish it. We couldn't get them to complete that portion, therefore we couldn't put the streets in. Therefore, at one point, we couldn't get any houses closed." In response to a question as to how many houses had been completed, ready to sell, in September, 1952, he answered: "About—fifty, yes." Deeds of trust were produced covering 287 houses in the entire development, and the witness testified that "the fifty are in here". It was stipulated that the deeds of trust showed a specified indebtedness to the County Trust Company and the Colonial Mortgage Corporation, respectively, with interest at 5 per cent, and that "broken down it was approximately $7,500 per house." The witness also testified with reference to a plat offered in evidence, without objection, that the 50 houses were located in Block 84, C and I. We think the court properly commented to the jury that "as we have calculated it, this interest was running at the rate of 5 per cent on $7,500 for each house. There were 50 houses. According to our calculation, that would amount to $1,562.50 per month. If the delay in finishing these roads was due to fault of L & S Company for

a month, that, we suggest to you, would be a proper yardstick for you to use in measuring the substantial damages."

Counsel for the appellant objected to this instruction on the ground that "there was no specific testimony as to that, except as to what the rates of interest were. We do not know when settlement was made. * * * I thought that the evidence as to the interest and as to the periods for which the interest was stated, and the amounts— even the fifty houses—there were some fifty houses— and the other figures were not specific enough, * * * any figure that they might arrive at would be speculation." There can be no doubt that where a construction contract is breached by delay, the other party is entitled to recover for the additional expense and cost occasioned thereby. Cf. *Stewart v. American Bridge Co.*, 108 Md. 200, 204, 219. In the instant case the extent of the delay and the factors that might excuse it were left to the jury under adequate instructions. There was testimony from which the jury might find that the sale of fifty houses was held up for about six months, during which time interest on the construction loans continued to run. The evidence as to the interest rate, the number of houses and the amount of the loan allocable to each house, was virtually undisputed, as was the evidence that the houses were completed and ready to sell when the last supplemental contract was executed. There was no direct proof, however, that the houses had been sold or that they could have been sold and settlements obtained during the period of delay, unless their saleability could be inferred from the existing state of the market. The action of the appellant deprived the vendor of its opportunity to sell and release the houses from the coverage of the deeds of trust, with consequent reduction in interest charges. The element of damage thus appears to be the loss of anticipated savings under an obligation to pay interest already incurred.

We have found no case directly in point. In *Evergreen Amusmt. Corp. v. Milstead,* 206 Md. 610, 618, we held

that the loss of anticipated profits in a business that was not well-established was too speculative to be left to the jury, but we recognized the general rule that anticipated profits are recoverable where there is a going business and a standard of past earning to be used for comparison. In *American Bridge Co. v. Camden Interstate Ry. Co.*, 135 F. 323 (CCA 4th), it was held that where there was a delay in constructing bridges for a railroad, damages were allowable in an amount based on the interest or carrying charges upon the capital invested in connections which could not be put into operation by reason of the delay. Cf. *N. Y. Mining Co. v. Fraser*, 130 U. S. 611, 622, and *Stubblefield v. Montgomery Ward*, 96 P. 2d 774, 98 P. 2d 14 (Ore.). See also Note 125 A. L. R. 1242, 1249, and *Restatement, Contracts,* Secs. 331(2) and 346(1). In the instant case there is no uncertainty as to the amount of possible savings. We think the trial court properly declined to modify its charge in the respects objected to.

*Judgment affirmed, with costs.*