SATINE ET AL. *v.* KOIER ET AL.

[No. 52, September Term, 1960.]

*Decided November 10, 1960.*

418

The cause was argued before Brune, C. J., and Henderson, Hammond, Prescott and Horney, JJ.

Leonard R. Snyder, with whom was Paul Ackerman on the brief, for appellants.

Alger Y. Barbee, with whom were Ginsberg & Ginsberg and Hyman Ginsberg on the brief, for appellees.

Henderson, J., delivered the opinion of the Court.

This appeal is from the decree of an equity court enjoining the appellants from foreclosing a deed of trust, ordering that certain trust notes be marked "paid" and the trust released, and awarding compensatory damages to the appellees.

In 1956 the R & L Development Corporation, of which Merton I. Berman was an officer, purchased 24 lots from Thomas D. Zibelli, giving back a first deed of trust for $48,000 and cash from the sale of two notes to appellants, secured by a second deed of trust. These notes were for $6,600 each, but were assigned to the appellants at a discount without recourse for $12,000. R & L Corporation began to develop the property but was unable to keep up the payments due under the first and second trusts, or taxes due on the property. Neither Zibelli nor the appellants attempted to foreclose. Instead, the R & L Corporation, with the knowledge and consent of the lienholders, listed the property for sale with the Conley Company, for whom Earl Watterson was a salesman. Eventually Watterson received a satisfactory offer from the appellees, who stipulated, however, that the property be reconveyed to Zibelli and conveyed to them by him. Two lots on which sample houses had been built were excluded from the pro-

posal. According to Watterson, he agreed to take less commission, Zibelli agreed to yield some interest in arrears, and Berman agreed to pay some interest and to try to persuade the appellants to accept a $7,700 second trust note in place of the $6,600 notes, in order that the deal might go through. A contract of sale was executed on February 18, 1958, by the appellees and Zibelli, calling for a first trust of $47,300 and a second trust of $7,700.

On February 19, 1958, the appellants signed a written agreement, referred to in the record as an "addendum", addressed to the Conley Company, attention Mr. Earl Watterson, reading as follows:

> "We, John L. Lauritsen and Charles Satine, agree to accept from Koier & Collins, a partnership, it's [sic] note for $7,700.00 at 6% per annum, secured by a deed of trust on lots 9 thru 16 exclude lot 10 Block 'q' and lots 1 thru 16 exclude lot 9 Block 'T' Garrett Park Estates, to be subordinated to construction loans at the rate of $350.00 per lot, said subordination to be paid when house is sold or within 12 months from date of note whichever is sooner. Trustees agree there shall be no release fee."

The two lots excluded were subsequently conveyed to the appellants by R & L Development Corporation. The written agreement was produced at the settlement on May 28, 1958, where the appellees accepted a deed of conveyance from Zibelli. They immediately began development of the property and obtained a construction loan. But the appellants refused to release their second deed of trust for $13,200, or to accept a new deed of trust for $7,700. This caused the lending corporation to withhold funds, and the work was brought to a halt for some months until winter weather had set in. The appellants took the position that their purpose and intent in signing the agreement dated February 19, 1958, was simply to help the financing of a prospective sale by taking back in part payment of the $6,600 notes, a second trust note from the purchasers. They attempted to explain the conveyance of the two excluded lots to them, as in connection with a release

of other claims they had against those houses. The controversy in the instant case turns on the construction and effect of the so-called "addendum".

The appellants contend that the paper writing is so vague and indefinite as to be unenforceable and that in the absence of an express undertaking to release the old notes, the acceptance of a new one would not necessarily extinguish the old. It is true that the writing does not expressly call for a release, but in the light of all the surrounding circumstances, fully known to the appellants, it is difficult to conceive how the acceptance of a new second note, from a responsible purchaser, would facilitate financing of a deal they were anxious to see consummated, if they were to retain a lien upon the property in the full amount of their original claim. The chancellor took the position that "reasonable minds would deduct that the addendum * * * could only indicate release of the existing trust." The conduct of the parties can hardly be explained on any other hypothesis.

The chancellor pointed out that the settlement sheet offered in evidence stated: "2nd Trust Note to be subordinated to $7,700.00 (old trust to be released)." There was testimony that all parties attending the settlement so understood. The appellants say they did not attend the settlement and are not bound by any representations there made by Berman or Watterson. It is true that the appellees would not be bound by an erroneous interpretation placed upon the document in question by other parties. For present purposes we may assume that neither Berman nor Watterson were agents of the appellees. But it is equally true that parties to a contract will not be allowed to place their own interpretation on what it means or was intended to mean. The test is what a reasonable person in the position of the parties would have thought it meant. *Ray v. Eurice,* 201 Md. 115, 127; *Weil v. Free State Oil Co. of Md.,* 200 Md. 62, 70. There is also force in the appellees' contention that the conduct of the appellants in signing the addendum, with knowledge that it would be used to induce a consummation of the sale, raises an equitable estoppel. Cf. *Solomon's Marina, Inc. v. Rogers,* 221 Md. 194, 198, and cases cited. See also *Machovec v. Shipley,* 171 Md.

339, 345. The appellees were justified in believing, upon the faith of the document whereby the appellants agreed to accept their note for $7,700, that its acceptance was to be in substitution for, and not in addition to, or as a further security for, the old obligation which was in default. Watterson's testimony indicates that he informed Satine that that was the whole purpose of the addendum at the time of its execution. Under all the circumstances it is difficult to see what other useful purpose it might have served.

On the question of damages, we find no error. The chancellor did not allow loss of profits. His allowance of $4,228.63, out of a claimed loss of $10,000, was based almost entirely on increased cost of labor and materials occasioned by the delay in obtaining construction loans and proceeding with the building operations. The appellants complain that the testimony on the point by the appellee Koier, admittedly an expert on construction, was not supported by documentary proof and hence was speculative. They further contend that the appellees were under a duty to mitigate damages and could have done so by insisting on clear title before proceeding with construction. On the second point, we have already indicated that the appellees were justified in relying upon the written addendum as a commitment to release. They were not compelled to wait for the actual recordation of the document before making commitments to others on their own part. The damage due to rising prices during the period of delay was thus occasioned by the appellants' breach, which the buyer was not bound to anticipate. It is well settled that where a construction contract is breached by delay, the other party is entitled to recover for the additional expense and cost occasioned thereby. *L. & S Const. Co. v. Bradbury Homes*, 208 Md. 476, 480. The argument that the appellees might have avoided the damage by declining to accept title or forbearing to begin construction until the release was actually secured and recorded is without merit. On the first point, Koier's testimony was quite specific and detailed, and his qualifications as an expert were admitted. The appellees did not attempt to challenge or even question the figures he gave. They offered no testimony to the contrary.

*Decree affirmed, with costs.*