## WEBB ET UX. *v.* OXLEY

[No. 342, September Term, 1960.]

*Decided August 17, 1961.*

The case was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*John C. Webb,* in proper person for the appellants.

*J. Hodge Smith* for the appellee.

SYBERT, J., delivered the opinion of the Court.

John E. Oxley, appellee, a Montgomery County attorney, was retained by John C. Webb and his wife, Helen H. Webb, appellants, to represent them in a land condemnation proceeding filed against the Webbs by the United States Government in the District Court of the United States for the District of Maryland in December, 1955. The record shows that Mr. Oxley is a reputable lawyer of 35 years' experience in general practice, including extensive trial work. He testified that he agreed to represent the Webbs after assuring himself that the Webbs' previous attorney was "no longer in the case", and had been discharged by them. In March, 1957, the parties agreed to a retainer and contingent fee arrangement under which Mr. Oxley should receive, after conclusion of the case, a flat fee of $500.00 and in addition 20% of any amount obtained in the suit for the property in excess of $9,750.00, the

figure already offered to the Webbs by the government. The $500.00 fee and expenses of litigation were to be deducted from the excess of the jury award above $9,750.00, before computation of the contingent fee.

The three day trial of the condemnation case was held on October 22-24, 1957, in the District Court. The jury's award for the property was $14,000.00, a figure far below the Webbs' asserted valuation of about $43,000.00.

Mr. Oxley was then discharged by the Webbs by letter dated October 26, 1957, in which Mr. Webb assured Mr. Oxley that "We do appreciate the work you have done for us and this action is not meant in any way to indicate a lack of confidence." The Webbs then retained other counsel to prosecute a motion for a new trial and an appeal to the United States Court of Appeals, both of which were unsuccessful.

There was subsequent correspondence between Mr. Oxley and the Webbs concerning the fee. On December 4, 1957, Mr. Webb, in a letter to Mr. Oxley, listed the expenses of litigation and computed the contingent fee due Mr. Oxley, over and above the flat fee of $500.00, as $448.00. He then stated: "This makes a total due you of $948. The question of a new trial has not been determined as yet. If a new trial is not taken, your fee will be forthcoming as the award is received. If a new trial is awarded and taken, the payment will be further delayed." In none of the correspondence appearing in the record is there any suggestion of dissatisfaction on the part of the Webbs with the competence of Mr. Oxley's representation of them.

After the Webbs lost their motion for a new trial and appeal, and received from the clerk of the District Court the $14,000.00 awarded by the jury, but did not pay his fee, Mr. Oxley sued the Webbs in assumpsit in the Circuit Court for Montgomery County. At the jury trial Mr. Webb, who is not an attorney, appeared in proper person. A jury verdict in favor of Mr. Oxley for $1130.00 resulted, the full amount of the fee plus interest. Mr. and Mrs. Webb appealed from the judgment entered on the verdict.

The brief filed by Mr. Webb on behalf of himself and Mrs. Webb is inartificially drafted and discursive. Stated con-

cisely (relatively speaking), the contentions presented therein appear to be as follows: (1) That the Circuit Court for Montgomery County did not have jurisdiction to hear and determine the case; (2) that the trial court erroneously sustained objections to appellants' attempt to prove negligence in the performance of a contract for legal services by asking appellee if he had ever read certain legal textbooks; (3) that the trial court erred by demonstrating prejudicial bias (a) in refusing to allow testimony by Mr. Webb concerning "the various sources that refused assistance in the location of lawyers qualified to serve as counsel or expert witness or other aid in this case"; (b) in asking Mr. Webb, in the manner of "stern cross-examination", certain questions relative to the non-payment of the fee to Mr. Oxley, and in ignoring the contention of the Webbs that Mr. Oxley had, prior to the trial of the condemnation case, without informing the Webbs, determined not to follow the trial strategy agreed upon by Mr. Oxley and Mr. Webb, and that therefore Mr. Oxley should have withdrawn from the case prior to trial; (c) in excluding a certain exhibit which appellant sought to introduce; and (4) that the verdict and judgment were contrary to the evidence.

## (1)

The question of jurisdiction was not raised by appellants in the trial court. However, matters of jurisdiction are always before this Court and are exceptions to the general rule that we will consider only such questions as have been raised and decided below. Maryland Rule 885. *Berlinsky v. Eisenberg,* 190 Md. 636, 59 A. 2d 327 (1948).

The appellants maintain that the United States District Court had exclusive jurisdiction to determine the amount of Mr. Oxley's fee, on the ground that it was a matter ancillary to the condemnation case. The so-called "ancillary jurisdiction" rule is a concept enunciated by the federal courts by which it is held that a district court acquires jurisdiction of a case or controversy as an entirety, and hence may, as an incident to disposition of a matter properly before it, possess jurisdiction to decide other matters raised by the case of which it could not take cognizance were they independently

presented. The rule and the cases upon which it is based are analyzed by Barron and Holtzoff in 1 *Federal Practice and Procedure* (Rules ed.) § 23. See also 36 C.J.S., *Federal Courts*, § 13 (2). From the authorities it is plain that the rule has no application to a situation such as the one before us. The rule does not purport to confer *exclusive* jurisdiction upon the federal courts in ancillary matters not otherwise within their jurisdiction.

Basically, the suit before us is not ancillary to the condemnation case. In *Cooperative Transit Co. v. West Penn Electric Co.*, 132 F. 2d 720, 724 (1943), the Circuit Court of Appeals for the Fourth Circuit quoted with approval from *Simkins on Federal Practice*, § 745, as follows:

> " 'If the bill contains matter not before litigated by the same parties standing in the same interests, that is, if new parties are brought in, and new matter charged as a basis of relief, then the bill is not ancillary, but an original bill, and cannot be supported by the former suit, but must stand independently on its parties and subject-matter for jurisdiction in the Federal courts.' "

See also, to the same effect, *Karnegis v. Schooler*, 57 F. Supp. 178 (D. C. N. D. Tex. 1944). Here, the parties in the condemnation case and the instant case are different, and the matter of Mr. Oxley's fee is "matter not before litigated by the same parties standing in the same interests," but is a separate and distinct cause of action which must be asserted like a claim arising upon any other contract. See *Ashman v. Schechter*, 196 Md. 168, 176, 76 A. 2d 139 (1950). In addition, there is no diversity of citizenship in the instant case, nor does it involve a federal question. Clearly, the Circuit Court for Montgomery County had jurisdiction of the subject matter of the instant suit, Code (1957), Art. 26, § 30, and had jurisdiction over the defendants, who are residents of that county, Code (1957), Art. 75, § 75.

(2)

The second contention of appellants apparently refers to

a series of questions Mr. Webb propounded to appellee on cross-examination, seeking to establish Mr. Oxley's negligent handling of the condemnation case by attempting to show his unfamiliarity with certain legal textbooks on trial tactics. The trial court sustained appellee's objection to this line of questioning, commenting, "There must be hundreds of textbooks on how to try cases, but that does not mean you have to follow them." We, too, fail to see how such questions were material. Unfamiliarity with certain legal texts would not prove negligence on the part of Mr. Oxley in handling the Webbs' case. Where matter sought to be elicited is immaterial it can hardly be said to be prejudicial to the complaining party to refuse to let it in. *L. & S. Const. Co. v. Bradbury Homes,* 208 Md. 476, 118 A. 2d 681 (1955); *Md. & Penna. R. R. Co. v. Knight,* 122 Md. 576, 582, 89 Atl. 1091 (1914). Since the Webbs suffered no prejudice from this ruling by the trial court, even if it were erroneous (which we do not find), it was harmless error and not ground for reversal. *Rippon v. Mercantile-Safe Dep.* 213 Md. 215, 131 A. 2d 695 (1957); *L. & S. Const. Co. v. Bradbury Homes, supra.*

## (3)

The contentions set forth in appellants' third argument are indefinite and fail to refer to any appropriate portion of the record as indicating bias or error on the part of the trial court. What specific rulings or actions are being challenged must largely be a matter of speculation.

## (a)

We fail to see the relevancy of testimony offered by appellants to show difficulty in acquiring legal representation or aid in the instant suit. At one point in the record an objection to such testimony was sustained by the trial judge on the ground that such evidence would be immaterial. We find no error in this ruling. See *Kennedy v. Crouch,* 191 Md. 580, 585, 62 A. 2d 582 (1948).

## (b)

Inspection of the record reveals no bias or error with respect to the substance of questions propounded to Mr. Webb by the trial judge or the manner in which they were asked.

Under the circumstances, a great deal of guidance on the part of the trial judge was necessitated by the lack of skill of appellants in presenting their own case, in order that the issues could be fairly delineated and considerable immaterial and irrelevant material excluded. The record discloses no instances of "stern cross-examination" by the trial judge. He gave Mr. Webb great latitude while testifying and examining and cross-examining witnesses. The record shows that Mr. Webb gave the jury at length his version of why he hadn't paid Mr. Oxley and why he thought the latter departed from agreed strategy. If any of the judge's remarks and questions were prejudicial (which is not apparent), the failure of appellants to object to the questions or move for a mistrial constituted a waiver, and this matter cannot be reviewed on appeal. See Maryland Rule 885; cf. *Kujawa v. Baltimore Transit Co.*, 224 Md. 195, 167 A. 2d 96 (1961).

(c)

Appellants claim that the trial court improperly excluded an alleged copy of a sales contract on a farm located near the Webb farm, which Judge Chesnut had refused to admit in evidence at the condemnation trial as relating to a property of comparable value. A painstaking examination of the record extract and the transcript shows that while the purported copy of a contract (which Judge Pugh found to be only a copy of an offer) was discussed at length before the jury, it was never actually offered in evidence, and therefore there is no ruling for us to review.

(4)

The appellants finally argue that the verdict and judgment were contrary to the evidence. The record reveals that the jury had before it evidence sufficient, if believed, to support its verdict for the appellee for the full amount of his fee and retainer with interest. In addition to what has been said, a memorandum and order filed by Judge Chesnut in the condemnation case overruling the Webbs' motion for a new trial was placed in evidence below. In it that distinguished jurist remarked that the condemnation case had been actively and well tried by Mr. Oxley. Likewise, a Montgomery County

lawyer called to the stand by Mr. Webb testified that he had attended part of the condemnation trial and that in his opinion Mr. Oxley had "done a very good job" of presenting the case. However, we do not reach the question here presented since under the provisions of the Maryland Rules the question of the sufficiency of the evidence to authorize a recovery or to sustain a defense will not be reviewed on appeal unless the question has properly been presented to the lower court. Rules 522, 885; *Grier v. Rosenberg,* 213 Md. 248, 131 A. 2d 737 (1957). No motion was made by the Webbs for a directed verdict, which step would have preserved the question for review. *Ewell v. Payne,* 199 Md. 73, 85 A. 2d 452 (1952) ; Rule 563.

Having found no error below we will affirm.

*Judgment affirmed, appellants to pay the costs.*