952 A.2d 346

**Eui KIM, et al.**

v.

**COUNCIL OF UNIT OWNERS FOR COLLINGTON CENTER III CONDOMINIUM.**

No. 723, Sept. Term, 2007.

Court of Special Appeals of Maryland.

July 2, 2008.

---

608

Alyssa W. Chang, Germantown, for appellant.

Frank J. Emig, Greenbelt, for appellee.

Panel: HOLLANDER, WOODWARD, JAMES A. KENNEY, III (retired, specially assigned), JJ.

KENNEY, J.

Appellee, the Council of Unit Owners for Collington Center III ("the Council"), as landlord of a commercial condominium complex located in Prince George's County, instituted repossession proceedings in the District Court for Prince George's County against Angela Trading Company, Inc. ("Angela Trading"), tenant of Condominium Unit 104 ("the Unit"). A default judgment of possession of the Unit was entered for the Council.

While Angela Trading's motion for a new trial was pending in the District Court, appellants, Eui Kim and Sook Ja Kim ("the Kims"), as the purchasers of the Unit from Angela Trading, sought a declaratory judgment in the Circuit Court for Prince George's County that they owned the Unit. The circuit court granted summary judgment in favor of the Council.

The Kims present four questions for our review, which we have consolidated and reworded as follows:

I. Are the Kims barred from pursuing their claim to the Unit by the doctrine of *res judicata?*

II. Did the circuit court err in granting summary judgment in favor of the Council?

III. Did the Council have standing to challenge the validity of the deed purporting to give an interest in the condominium unit to the Kims?

For the following reasons, we shall dismiss this appeal as moot.

## FACTUAL AND PROCEDURAL HISTORY

### I. Facts

On October 15, 1985, Prince George's County, as landlord, entered into a 61–year lease agreement ("the Prime Lease") with Foreign Trade Zone Three Associates Limited Partnership ("FTZT Associates"), as tenant, for approximately 11.8 acres of land in the subdivision known as Prince George's International Commerce Center ("the Property"). That same day, pursuant to a sublease agreement ("the Sublease"), FTZT Associates leased all of its rights and interests in the Property to Harkins Associates, Inc. ("Harkins Associates") for a term to "expire, unless sooner terminated, upon the expiration of the term of the Prime Lease[.]" Section 14 of the Sublease permitted Harkins Associates to develop the Property into commercial condominiums for sale to third parties, "subject to the terms of [the Prime Lease]." The Memorandum of the Prime Lease and the Sublease, signed by representatives for Prince George's County, FTZT Associates, and Harkins Associates, Inc., was recorded among the land records on November 5, 1985.

Harkins Associates established a condominium regime of twenty-six commercial units known as Collington Center III Condominium on August 3, 1987. Also on August 3, the Prime Lease and the Sublease were amended to extend the respective term of each to sixty-six years. The First Amendment to the Memorandum of the Prime Lease and the Sublease reflecting the new term was recorded.

On November 25, 1987, by a Deed and Assignment of Subleasehold Interest ("the Unit 104 Assignment Deed"), Har-

kins Associates assigned its interest in the Unit [1] to Angela Trading for "the term of years set forth in [the Prime Lease]." The Unit 104 Assignment Deed expressly stated that it was subject to the Prime Lease and the Sublease, and that the Unit "is a portion of the property" of which Prince George's County was the fee simple owner. It was recorded on November 27, 1987.

On July 6, 1989, Prince George's County assigned its interest in the Prime Lease to Collington Center Associates Limited Partnership ("Collington Center Associates"), and, by a deed recorded on July 10, 1989, it granted its fee simple ownership of the Property to Collington Center Associates.

Collington Center Associates conveyed its fee simple ownership of the Property to the Council on May 28, 1996. By a separate agreement, Collington Center's interest in the Prime Lease and FTZT Associates' interest in the Sublease were assigned to the Council. Relevant to this case, Section 12.13 of the Prime Lease and Section 3 of the Sublease amendment provided that interests under those leases would not merge unless a written instrument effecting such a merger was executed. The Council became sublessor under the Sublease.

On August 31, 2005, Angela Trading executed a deed ("the Deed") purporting to grant to the Kims, "in FEE SIMPLE, [its] sub-leasehold estate, title and interests in and to the land and all of their interests in and to the improments [sic] [,]" for "consideration of the sum of Ten and No/100 (10.00) Dollars[.]" The Deed was recorded on October 5, 2005.

## II. Legal Proceedings

### A. District Court Proceedings

On April 14, 2006, the Council filed a complaint for breach of lease against Angela Trading in the District Court for Prince George's County, asserting that Angela Trading was in sub-

---

1. The Unit 104 Assignment Deed stated that Harkins Associates assigned its "sub-leasehold estate, title and interests in and to [the Property] and all of [its] interests in and to the improvements" to Angela Trading.

stantial violation of the Sublease for "[u]nauthorized lease to subtenant, excessive noise and disturbance[,] and creating a nuisance." [2] The complaint stated that, on October 13, 2005 and January 25, 2006, the Council notified Angela Trading that it was in violation of the Sublease and that the Council desired to repossess the premises.

Angela Trading did not appear at the June 13, 2006 hearing, and a default judgment of possession of the Unit was entered in favor of the Council. Angela Trading did not appeal the default judgment within the required ten day period. In a letter dated June 23, 2006, the Council's attorney notified counsel for Angela Trading that it had filed a petition for a warrant to remove Angela Trading from the Unit.

Angela Trading filed a motion for a new trial on June 26, 2006, in which it claimed that it was the tenant of the Unit and that it had not been served with the Counsel's complaint for breach of lease. Attached to it's motion, Angela Trading provided an "affidavit of non-service" signed by Eui Kim, "as principal for Angela Trading[.]" In the affidavit, Eui Kim asserted:

3. I was never served with any complaint in the above captioned case.

4. I am not in breach of the lease with [the Council] and if I was previously in breach of lease with [the Council], any such breach has been cured at this time.

(Emphasis added.)

On August 24, 2006, Angela Trading filed an amended motion for a new trial. In its supporting memorandum, filed

---

2. In a letter to Angela Trading dated October 13, 2005, the Council stated:

You should be aware that possession of your unit is pursuant to various lease agreements. [The Council] is the landlord under these leases. By permitting your tenant to conduct its operations in a loud and offensive manner, you are in violation under the terms of your lease with [The Council].

On January 25, 2006, the Council sent another notice to Angela Trading, informing it that it had "thirty [ ] days to remove [its] subtenant from [the Unit,]" or its "lease of [the Unit would] expire and terminate."

seven days later, it explained that, "previous to the filing of [the breach of lease action], [it had] conveyed its ownership interest in [the Unit] to [the Kims.]" In the memorandum, Angela Trading argued:

Neither Angela Trading [ ], nor [the Kims] had any knowledge of the pending action for breach of lease, nor did either Angela Trading [ ] or [the Kims] know about the entry of judgment by default until June 26, 2006[,] when the attorney for Angela Trading [ ] and [the Kims] received a letter from [the Council's] attorney, just after the appeal period had run, advising [their] counsel that a judgment had been entered by default in favor of [the Council.]

That judgment names only Angela Trading [ ] as a defendant[,] and does not name [the Kims], the actual tenants pursuant to the [D]eed and assignee of the subleasehold interest.

In its conclusion, it asserted that "[the Kims], the true lessor, [have] a valid and credible defense to the alleged breaches of lease filed against Angela Trading [,]" and that "[the Council] has put [the Kims'] property interest in jeopardy and has caused [the Kims] to incur substantial legal fees[.]"

The initial hearing on the original motion for a new trial, conducted on August 30, 2006,[3] was limited to whether Angela Trading had been actually served and had notice of the June 13, 2006 hearing. Another hearing on whether the proper defendant was named, the issue raised in the amended motion for a new trial, was held on December 11, 2006.

At the August 30, 2006 hearing, Bonnie Windsor, supervisor of the landlord clerks and civil clerks in the Prince George's County Sheriff's Office, testified that she mailed the complaint and summons to the Unit on April 26, 2006. Kristina Coleman, a Prince George's County deputy sheriff, testified that she served the complaint by affixing it to the front door of the Unit on April 28, 2005. Frank Carlyle, president of In The

---

3. A prior hearing, set for August 22, 2006, was reassigned so that it could be heard by the judge who ordered the default judgment.

Beginning School of Arts, testified that the school subleased
the Unit from Angela Trading. He stated that any mail that
he received at the Unit that was addressed to Angela Trading
was "store[d] [ ] in the inbox for [Eui] Kim [,]" who typically
retrieved the mail once a week. Eui Kim testified that he had
been Angela Trading's president for thirty-five years, and that
he was the owner of the Unit. He stated that he had visited
the Unit in late April of 2006, but he did not see the complaint
posted on the door and he did not receive the District Court's
mailed notice of the June 13, 2006 hearing. At the conclusion
of the hearing, the District Court stated that it did not believe
Eui Kim's testimony and found that the complaint was proper-
ly served.

Angela Trading's amended motion for a new trial, in which
it argued that the Kims were the proper party to the breach of
lease proceedings, was heard on December 11, 2006. At that
hearing, it was asserted that the Kims were the owners of the
Unit, and, because they were not named as defendants in the
complaint, they could not have received notice of the June 13,
2006 hearing. The Council argued that Angela Trading had
acquired only a leasehold interest in the Unit and, therefore, it
could not transfer fee simple title. According to the Council,
the Deed was invalid because it did not comply with the Prime
Lease's restriction on assignability, did not mention the Prime
Lease, and purported to convey a fee simple interest, which
Angela Trading did not possess. Because the Kims did not
acquire an interest in the Unit, the Council asserted, Angela
Trading was the proper defendant in the breach of lease
proceeding.

At the conclusion of the hearing, the District Court denied
the motion for a new trial. It determined that Angela Trading
had a leasehold interest in the Unit, and that the Deed to the
Kims was invalid. Therefore, Angela Trading was the proper
party. Angela Trading noted an appeal on the record, which
was subsequently dismissed.[4]

---

4. The Council filed a motion to dismiss Angela Trading's appeal, assert-
 ing that it "disregarded the appeal rules and [it] ha[d] not taken any

## B. Circuit Court Proceedings

The Kims filed a Verified Complaint to Quiet Title and Declaratory Judgment on August 29, 2006. In their Complaint, they asked the court to declare that the Deed conveyed ownership of the Unit to them. The Kims simultaneously filed a motion seeking summary judgment.

In its cross-motion for summary judgment, the Council asserted that the Deed failed to transfer any interest in the property to the Kims. Attached to its cross-motion, the Council included a Statement of Undisputed Material Facts that traced the chain of title of the Property and the Unit. The Kims did not file a contravening affidavit.

Following the April 4, 2007 hearing, the circuit court issued a written opinion granting summary judgment in favor of the Council. After the denial of their motion to reconsider, the Kims filed this appeal.

## DISCUSSION

## I. Effect of District Court Proceeding

### A. Res Judicata

Included in the Council's brief is a motion to dismiss the Kims' appeal as moot, arguing that "[t]he sole issue raised in [the Kims'] declaratory judgment action and in this appeal was already asserted and finally decided in the District Court landlord-tenant proceedings."

 *Res judicata* bars a lawsuit involving claims that have been litigated or should have been litigated in a prior proceeding between the same parties, or their privies. *United*

---

steps to prosecute [its] appeal" because it did not order the transcript of the District Court proceeding, as required by Maryland Rule 7–113(b), and it did not submit a memorandum, as required by Rule 7–113(d).

The docket entry reads: "[The Council's] motion to dismiss [Angela Trading's] appeal from district court argued. motion granted. district court decision final. judgment by district court stands. case closed statistically."

*Book Press, Inc. v. Maryland Composition Co., Inc.,* 141 Md.App. 460, 476, 786 A.2d 1 (2001). A determination that *res judicata* applies may render a case moot. Maryland Rule 8–602(a)(10) permits this Court, on motion or on its own initiative, to dismiss an appeal because the case has become moot. A case is moot " 'if, at the time it is before the court, there is no longer an existing controversy between the parties so that there is no longer any effective remedy which the court can provide.' " *Baltimore Sun Co. v. State,* 340 Md. 437, 454, 667 A.2d 166 (1995) (quoting *Attorney General v. A.A. School Bus,* 286 Md. 324, 327, 407 A.2d 749 (1979)). *See Arundel Corp. v. Board of Zoning Appeals of Howard County,* 255 Md. 78, 79, 257 A.2d 142 (1969) (Dismissing the appeal of a denial of an injunction as moot based on *res judicata.*); *Roebuck v. Steuart,* 76 Md.App. 298, 307 fn. 2, 544 A.2d 808 (1988) ("Steuart correctly observes in his brief that this issue would become moot by a holding in his favor that this judgment is barred because [ ] of the doctrine of res judicata[.]").

In *Simpkins v. Ford Motor Credit Company,* 389 Md. 426, 441 fn. 23, 886 A.2d 126 (2005), the Court of Appeals summarized the doctrine of *res judicata* in Maryland:

Maryland law requires the following elements for the application of res judicata: "1) that the parties in the present litigation are the same or in privity with the parties to the earlier dispute; 2) that the claim presented in the current action is identical to the one determined in the prior adjudication; and 3) that there was a final judgment on the merits." Accordingly, a judgment between the same parties and their privies acts as a final prohibition to any other proceeding upon the same cause of action and is final, "not only as to all matters decided in the original suit, but also as to matters that could have been litigated in the original suit." Res judicata is applied notwithstanding the type of court which rendered the earlier final judgment, provided that the earlier final judgment was rendered by a court of "competent jurisdiction." The judgment of a court, acting

within the limits of its jurisdiction, that has not been reversed must be accepted as conclusive by all other courts. (Citations omitted.)

 Whether the parties are the same or in privity with a party in the prior proceeding is a question of law. *Boyd v. Bowen,* 145 Md.App. 635, 658, 806 A.2d 314 (2002) (citing *Douglas v. First Security Federal Savings Bank, Inc.,* 101 Md.App. 170, 180, 643 A.2d 920 (1994)). Because the Kims were not named parties in the District Court case, the question is whether they are in privity with Angela Trading, the named party in that proceeding.

In *Douglas,* 101 Md.App. at 183, 643 A.2d 920, we examined privity in the context of *res judicata:*

Generally, the parties to a suit are those persons who are entered as parties of record. But for the purpose of the application of the rule of *res judicata,* the term "parties" includes all persons who have a direct interest in the subject matter of the suit, and have a right to control the proceedings, make defense, examine witnesses, and appeal if an appeal lies. So, where persons, although not formal parties of record, *have a direct interest in the suit,* and in the advancement of their interest take open and substantial control of its prosecution, *or they are so far represented by another that their interests receive actual and efficient protection,* any judgment rendered therein is conclusive upon them to the same extent as if they had been formal parties.

(Emphasis in original.)

As Angela Trading asserted during the December 11, 2006 hearing,[5] the Kims clearly had a direct interest in the District Court proceedings. Counsel for Angela Trading, who also served as counsel for the Kims,[6] repeatedly contended that the

---

**5.** At the hearing, counsel for Angela Trading stated that the Kims had a property interest that goes towards the merits of the breach of lease action.

**6.** At the August 30, 2006 hearing, counsel for Angela Trading stated that he also represented the Kims.

Kims had a fee simple interest in the Unit. Eui Kim, when he testified at the August 30, 2006 hearing, stated that he was the owner of the Unit.

Eui Kim actively participated in the District Court proceedings. In his affidavit of "non-service" to accompany Angela Trading's motion for a new trial, he stated that *he* was not served with the complaint and that *he* was not in breach of the lease with the Council. At the August 30, 2006 hearing on the service of process, he testified that he had not been served with the complaint.

Angela Trading, acting through Eui Kim, represented, and attempted to protect, the Kims' asserted interest in the Unit throughout the District Court proceedings. Attached to its first motion for a new trial, it included Eui Kim's affidavit described above. The amended motion for a new trial explained that Angela Trading had conveyed its interest in the Unit to the Kims, and that "[n]either Angela Trading [ ], *nor [the Kims]* had any knowledge of the pending action for breach of lease, nor did either Angela Trading [ ] *or [the Kims]* know about the entry of judgment by default until June 26, 2006[,] when the attorney representing Angela Trading [ ] *and [the Kims]* received a letter from [the Council's] attorney[.]" (Emphasis added.) Moreover, the conclusion of the motion focused *solely* on the Kims' interests:

> Upon information and belief, [the Kims], the true lessor[s], [have] a valid and credible defense to the alleged breaches of lease filed against Angela Trading Company. By failing to thoroughly investigate its claim and filing suit prematurely against the wrong party, [the Council] has put [the Kims'] property interest in jeopardy and has caused [the Kims] to incur substantial legal fees as a result of this improper action. This Court should strike its judgment and dismiss this action filed against the wrong party.

Counsel clearly represented the Kims' interest in the Unit during the hearings. At the August 30, 2006 hearing, when the District Court rejected its argument that it did not receive notice of the breach of lease proceeding, Angela Trading

asserted that it had conveyed its fee simple interest in the Unit to the Kims, and, therefore, it was not the correct party defendant and the default judgment of possession should be vacated. The success of that contention depended on establishing the Kims' interest in the Unit. That argument was asserted again during the December 11, 2006 hearing.

Eui Kim served as president of Angela Trading for thirty-five years and took an active role in the litigation. In *Bodnar v. Brinsfield,* 60 Md.App. 524, 483 A.2d 1290 (1984), this Court stated that "[w]hen the owners of a closely-held corporation participate at trial 'it may be presumed that their interest coincide with the corporation's interests and that one opportunity to litigate interests that concern them in common should sufficiently protect both.'" Under these circumstances, the Kims' failure to formally intervene and become parties of record does not permit them to circumvent the judgment of the District Court by a separate proceeding in the circuit court. *See Douglas,* 101 Md.App. at 186–187, 643 A.2d 920 ("[I]t is a 'well established principle of law that a person who has full knowledge of pending litigation and that it affects, or will determine, his rights, and, who is entitled to appear, but who makes no effort to intervene as a party, and permits such a conclusion thereof without objection, such person is concluded by the proceedings as effectually as if he were named on the record.'") (quoting *Reddick v. State,* 213 Md. 18, 30, 130 A.2d 762, *cert. denied,* 355 U.S. 832, 78 S.Ct. 50, 2 L.Ed.2d 44 (1957)).

The doctrine of *res judicata* bars the relitigation of a claim when "'the subject matter and causes of action are identical or substantially identical as to the issues actually litigated and as to those which could have been or should have been raised in the previous litigation.'" *R & D 2001, LLC v. Rice,* 402 Md. 648, 663, 938 A.2d 839 (2008) (quoting *Board of Ed. v. Norville,* 390 Md. 93, 106, 887 A.2d 1029 (2005)). *Res judicata* "restrains a party from litigating the same claim repeatedly and ensures that courts do not waste time adjudicating matters which have been decided *or could have been*

*decided* fully and fairly." *Anne Arundel County Board of Education v. Norville,* 390 Md. 93, 107, 887 A.2d 1029 (2005) (Emphasis in original.)

At the conclusion of the December 11, 2006 hearing, the District Court concluded that "[the Council] is the owner [of the Unit] in this case; that Angela Trading is [its] tenant; [and] that there was a leasehold established between the two parties." It further concluded that, because Angela Trading's "attempt to transfer some interest to the Kims ... wasn't done properly[,]" the Kims did not have a property interest in the Unit.[7] In their complaint in the circuit court, the Kims request that the court "determine, adjudicate and declare the rights of the parties with respect to [the Deed] and whether [the Council] [was] entitled to possession and/or ownership of [the Unit]." The District Court, in its finding, effectively determined both the ownership and the right to possession in the Unit.

The Kims' argument that the District Court lacked jurisdiction to determine the parties' respective property rights fails because the District Court made its decision regarding the property rights and the status of the parties in the exercise of its exclusive jurisdiction in landlord and tenant actions. Maryland Code Annotated (1974, 2006 Repl.Vol.) § 4–402(b) of the Courts and Judicial Proceedings Article ("CJ") states that, *"[e]xcept as provided in § 4–401 of this subtitle,* the District Court does not have jurisdiction to decide the ownership of real property or of an interest in real property." (Emphasis added.) CJ § 4–401(4) provides the District Court with *exclusive* jurisdiction in "[a]n action involving a landlord and tenant, ... regardless of the amount involved." Although an "action involving landlord and tenant" in CJ § 4–401(4) "was intended to be limited to 'those possessory *in rem* or *quasi in rem* actions that provided a means by

---

7. The District Court initially stated that it found the deed "entered on November 25, 1987" invalid, but it subsequently clarified that it was the "deed entered on August 31, 2005" that was invalid, not the Unit 104 Assignment Deed.

which a landlord might rapidly and inexpensively obtain repossession of his premises situated in this State or seek security for rent due from personalty located on the leasehold,'" this was such a case. *Williams v. Housing Authority of Baltimore City*, 361 Md. 143, 157, 760 A.2d 697 (2000) (quoting *Greenbelt Consumer Services, Inc. v. Acme Markets, Inc.*, 272 Md. 222, 229, 322 A.2d 521 (1974)).

Statutory construction is an issue of law. *Singley v. County Commissioners of Frederick County*, 178 Md.App. 658, 675, 943 A.2d 636 (2008). In *Rush v. State*, 403 Md. 68, 97–98, 939 A.2d 689 (2008), the Court of Appeals recently summarized:

> It is well established that "[t]he cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature." We begin our analysis by first looking to the normal, plain meaning of the language of the statute so that "no word, clause, sentence or phrase is rendered superfluous or nugatory." Further, whenever possible, an interpretation should be given to the statutory provisions which does not lead to unreasonable or illogical consequences. If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends. If, however, the language is subject to more than one interpretation, it is ambiguous, and we resolve that ambiguity by looking to the statute's legislative history, case law, and statutory purpose.

(Citations omitted.)

■ A plain-language reading of the phrase, "[e]xcept as provided in § 4–401 of this subtitle," indicates that CJ § 4–402(b)'s general limitation on the District Court's jurisdiction is not applicable in instances arising under CJ § 4–401, including an action involving a landlord and tenant as provided in CJ § 4–401(4).[8]

---

**8.** The District Court's jurisdiction under CJ § 4–401(4) is not without limitation. Maryland Code Annotated (1974, 2003 Repl.Vol.), § 8–404 of the Real Property Article ("RP") provides that certain title disputes in a landlord tenant action must be heard in the circuit court.

The legislative history of CJ § 4–402(b) confirms this interpretation. *See Mayor of City Council of Baltimore v. Chase,* 360 Md. 121, 131, 756 A.2d 987 (2000) ("[E]ven when the language of a statute of free from ambiguity, 'in the interest of completeness' we may, and sometimes do, explore the legislative history of the statute under review. We do so, however, to look at the purpose of the statute and compare the result obtained by use of its plain language with that which results when the purpose of the statute is taken into account. In other words, the resort to legislative history is a confirmatory process; it is not undertaken to contradict the plain meaning of the statute.") Before it was amended in 1993, CJ § 4–402(b) read, "The District Court does not have jurisdiction to decide the ownership of real property or of an interest in real property." The present introductory phrase was proposed in House Bill 1174. *See* H. 1174, 1993 Leg., 407th Sess. (Md. 1993). Its accompanying Floor Report stated that, at that time, CJ § 4–401(8) [9] "grant[ed] the District Court jurisdiction over petitions filed by a county or municipality for the listed purposes if the relief sought [was] an injunction[;] [h]owever, under § 4–402(b) ..., the District Court [did] not have jurisdiction to decide the ownership of real property or of an interest in property." House Bill 1174, the Floor Report explained, "alter[ed] this provision to grant the District Court jurisdiction in all cases where equitable relief is provided."

In a statement dated March 4, 1993, Mary E. Gardner, the Baltimore City Mayor's legislative liaison to the Department of Housing and Community Development, explained that the amendment "[would] state, in effect, that except *as ancillary* to its existing jurisdiction, the District Court cannot decide the ownership of real property." According to Gardner, "[i]t is only common sense that the District Court has to have ancillary jurisdiction to decide questions of property ownership

---

9. CJ § 4–408 provides:

(8) A petition filed by a county or municipality, including Baltimore City, for enforcement of local health, housing, fire, building, electric, licenses and permits, plumbing, animal control, consumer protection, and zoning codes for which equitable relief is provided.

without which it would be largely out of business—unable to exercise properly the jurisdiction explicitly granted in [CJ §] 4–401." *See also Webb v. Oxley,* 226 Md. 339, 343–344, 173 A.2d 358 (1961) ("The so-called 'ancillary jurisdiction' rule is a concept enunciated by the federal courts by which it is held that a district court acquires jurisdiction of a case or controversy as an entirety, and hence may, as an incident to disposition of a matter properly before it, possess jurisdiction to decide other matters raised by the case of which it could not take cognizance were they independently presented.")

On September 29, 2000, former Maryland Attorney General J. Joseph Curran, Jr. issued an opinion related to a cooperative housing project that is relevant to this case:

You have requested our opinion [as to] whether the District Court has jurisdiction over eviction actions brought by Armistead Homes Corporation, a cooperative housing corporation, against its member tenants, who occupy housing units under renewable 99–year leases.

For the reasons detailed below, it is our opinion that the District Court has jurisdiction to handle such a matter as a landlord-tenant proceeding. Of course, a defendant would have the right to remove the action to circuit court for a jury trial if the defendant's property interest in the unit exceeds $10,000.

\* \* \*

A. Jurisdiction of the District Court

The District Court is a court of limited jurisdiction. Maryland Constitution, Article IV § 41A ("[t]he District Court shall have the original jurisdiction prescribed by law.") Except for juvenile cases, the Constitution requires that the District Court's jurisdiction be uniform throughout the State. Id.

Subject to limited exceptions, the District Court does not have equity jurisdiction or jurisdiction to decide the ownership of an interest in real property. However, the District Court does have exclusive original jurisdiction in "[a]n ac-

tion involving landlord and tenant ... regardless of the amount involved. Of course, this provision must be construed in conjunction with the constitutional right to a jury trial should the property interest exceed $10,000.

Thus, whether the District Court has jurisdiction of an action by the Corporation to evict a member from Armistead Gardens based on a violation of the lease depends on whether the relationship between the Corporation and its members is a landlord-tenant relationship.

\* \* \*

### C. Summary

Because the relationship between Armistead Homes Corporation and its members is properly characterized as a landlord-tenant relationship, the covenants set forth in, or incorporated into the lease, are enforceable in the District Court as a landlord-tenant matter.

85 *Op. Att'y Gen.* 265 (2000).

After the District Court rejected Angela Trading's lack of notice defense, it argued that it was not a proper party because it had conveyed its interest in the Unit to the Kims. To reject that argument, as it did, the District Court had to determine what interest, if any, the Kims held in the Unit, which it was permitted to do under CJ §§ 4–401(4) and 4–402(b).

That the underlying judgment of possession was a default judgment that the District Court did not vacate does not erode its *res judicata* effect in the case. *See Morris v. Jones,* 329 U.S. 545, 550–551, 67 S.Ct. 451, 91 L.Ed. 488 (1947)(" 'A judgment of a court having jurisdiction of the parties and of the subject matter operates as *res judicata,* in the absence of fraud or collusion, even if obtained upon a default.' ") (quoting *Riehle v. Margolies,* 279 U.S. 218, 225, 49 S.Ct. 310, 73 L.Ed. 669 (1929)); *Millison v. Ades of Lexington, Inc.,* 262 Md. 319, 328, 277 A.2d 579 (1971) ("A judgment by default, while it may require extension by way of proof of damages ... is still final in respect of the question of the liability of the party against

whom it is obtained. 'Like every other judgment, it is conclusive of every fact necessary to uphold it.' "); *Wagner v. Cholley*, 181 Md. 411, 414, 31 A.2d 852 (1943) (stating that a default judgment in an Ohio action was conclusive in the Maryland action on the judgment as to all defenses which were available in the Ohio action); *Sheahy v. Primus Automotive Financial Services, Inc.*, 284 F.Supp.2d, 278, 281 (D.Md. 2003) ("[A]lthough the earlier suit filed by Primus against Sheahy in the Maryland District Court resulted in a default judgment, for *res judicata* purposes a default judgment is given the same [preclusive] effect as a judgment entered after a trial on the merits.").

The District Court's denial of the motion for a new trial constituted a final judgment, which could be, and was, appealed. *See Gravely v. State*, 164 Md.App. 76, 90, 882 A.2d 889 (2005) ("The trial court's decision on [the motion for a new trial] was a final judgment that appellant could have appealed."); *see also* CJ § 12–101(f) (defining "final judgment" as "a judgment, decree, sentence, order, determination, decision, or other action by a court, including an orphans' court, from which an appeal, application for leave to appeal, or petition for certiorari may be taken.").

### B. In–Rem Proceeding

■ The District Court's judgment awarding possession of the Unit to the Council was a judgment in rem. *See Jones v. Albert*, 50 Md.App. 685, 689, 440 A.2d 416 (1982) (stating that an action is an in rem action "in so far as it involves a clarification of title and recovery of possession of land"). A judgment in rem is "an adjudication pronounced on the status of a some particular subject matter[.]" *Syester v. Brewer*, 27 Md. 288, 313 (1867).

■ A judgment in rem is binding and conclusive with respect to the res, and it binds all persons who may have or claim any right or interest in the subject matter of the litigation, as to the particular point or matter decided. *See Brown v. Smart*, 69 Md. 320, 332, 17 A. 1101, 1101 (1888);

Restatement (First) of Judgments § 74(1) ("In a proceeding in rem with respect to a status[,] the judgment is conclusive upon all persons as to the existence of the status.")

▮▮ Additionally, where, as here, title to or a right or interest with respect to real property is put directly in issue, and such issue is tried and determined, the judgment is conclusive in all further litigation between the same parties or their privies, regardless of the purpose of the action in which the judgment was rendered. *See Bugg v. State Roads Commission,* 250 Md. 459, 462, 243 A.2d 511 (1968) (finding that the appellant was not entitled to relief because the description under his deed was identical to the description of a tract that was the subject of an ejectment suit which was brought by third persons against plaintiff and in which title was found to be vested in third persons); *Hartford Accident & Indemnity Co., Inc. v. State, to use of Ritter,* 201 Md. 433, 438–439, 94 A.2d 639 (1953) ("If, however, title to the property was in issue in the replevin suit, judgment there is conclusive as to title in the suit on the bond."). The District Court's decision as to ownership and the right to possession of the Unit, therefore, is conclusive.

**APPEAL DISMISSED AS MOOT; COSTS TO BE PAID BY APPELLANTS.**